Lawrence Harris RICHEY, Petitioner,

v.

A. K. BAUR, Superintendent of State Hospital No. 1, Respondent.

No. 45898.

Supreme Court of Missouri.
En Banc.

Jan. 19, 1957.

John M. Cave, Fulton, for petitioner.

John M. Dalton, Atty. Gen., Robert R. Welborn, Asst. Atty. Gen., for respondent.

LEEDY, Judge.

Petitioner, Lawrence Harris Richey, seeks by habeas corpus to effect his discharge from the custody of respondent, the Superintendent of State Hospital No. 1 at Fulton, to which institution he was committed by an order of the Circuit Court of the City of St. Louis made and entered September 30, 1955, in a certain criminal case wherein he was charged with, and tried for the crime of robbery in the first degree. Having been acquitted on the sole ground that he was insane at the time of the commission of the offense, and the jury having further found that he had not entirely and permanently recovered, the court was required to enter of record an order "that he be sent to a state hospital, designating it, and further requiring the sheriff * * * to convey such prisoner to the hospital." Section 546.510 RSMo 1949 and V.A.M.S. This the court did, but appended thereto a condition not specified in such statute, to-wit, that defendant be there *"detained and treated until this Court on a Writ of Habeas Corpus determines that his*

*sanity has been restored."* The petitioner challenges the validity of this portion of the order, and this is the determinative question in the case.

In the application for the writ, petitioner alleged that he is "now sane and restored to reason." On the hearing he introduced in evidence, among other things, two written reports signed by Val B. Satterfield, M. D., Psychiatric Consultant at the hospital, dated April 12, 1956, and September 19, 1956, and reading, respectively, as follows:

"Richey, Lawrence Harris.

April 12, 1956
Staff Meeting

"The diagnostic conference was held at the Biggs Building on the 12th day of April, and the above named patient, Lawrence Harris Richey, was presented to staff for diagnostic evaluation, and the following was dictated and concurred in by the other members of the staff:

"This 21 year old white man, who was admitted to this hospital December 7, 1955, has a record of irregular living and lack of parental control since the age of 13. He has been committed to a reformatory, and there has been two occasions upon which he has been involved in larceny. According to his statement he became disturbed and amnesic in doing his duty with the army for which illness he received a medical discharge. In the last years he has been living in a hotel, working, and has had the entire responsibility of his own conduct and his own deeds. He states that he was drinking to excess and during this drinking bout held up the hotel. The record indicates that in consideration of his past record he was committed to this hospital as being not guilty by reason of insanity. There is no evidence of delusions, hallucinations, or disturbed sensorium at this time. He is immature, impulsive, volatile, talkative, and reveals a multitude of juvenile judgment defects. It appears that he is an immature psychotic personality with manic characteristics unable to make a social adjustment and given to psychotic-like confusional episodes when under pressure or drinking. At the present time there is no evidence of psychotic manifestations.

*Diagnosis:* Schizophrenic reaction, Chronic Paranoid immature impulsive Neurotic Personality. He is competent.

*Recommendation:* It is recommended that therapy be limited to an attempt to orient him both as to his judgment defects and need for detailed planning. He might be tried in a more open situation in this hospital with some occupation to consume his time."

"Biggs Building Staff Conference
September 19, 1956
Progress Note
"Richey: Lawrence

Case #29,038

"This man, who entered this hospital December 7, 1955, carries a diagnosis of Schizophrenic Reaction, Paranoid Type and Immature, Impulsive, Neurotic Personality.

"At the present time he shows no evidence of delusions or hallucinations. He is still somewhat impulsive and his self-critique is not as well developed or honestly applied as would be desirable.

"He has been receiving therapy in a group project and has responded well, except that he arrives rather too quickly at a point where he believes that he has entirely overcome his difficulties and quite able to go out and make his way. He is still immature and his judgment is not satisfactory.

"However, he is 22 and some tendencies toward direction are appearing and as it does not seem possible to continue to confine him. Because it is considered he is competent at this time, it is recommended that he be given an opportunity to attempt to make a social adjustment."

The respondent testified that he concurs in the views expressed in these reports. In

fact, his position is thus stated in the suggestions filed in his behalf following the final submission of the cause: "Insofar as the facts of the present matter are concerned, respondent does not now controvert the petitioner's contention that he is at present legally sane. The respondent has retained the petitioner in his custody because of the condition of the order of his commitment, and for that reason alone." Nor does he seek to uphold the validity of the requirement of the order that petitioner be detained and treated at the hospital until the committing court (Division 10 of the Circuit Court of the City of St. Louis) determines that petitioner's sanity has been restored. On the contrary, the Attorney-General, who represents respondent in this court, states that he is "unable to offer the court any authority to controvert the position of petitioner in this case."

The terms of the statute under which petitioner was committed, § 546.510, are quite general. Indeed, in providing for the disposal of a defendant acquitted solely because of insanity, and who has not entirely and permanently recovered, the statute goes no further than to declare that such a person shall "be sent to a [designated] stated hospital," and requiring the officer to convey the prisoner thereto. A former statute on the same subject, § 4047, RSMo 1939 (made applicable by force of § 4049 of the same revision) provided that such a person "shall * * * be conveyed to the hospital for the care and treatment of the insane and *there kept until restored to reason.*" While omitting this language of the former statute which we have italicized, the clear import of the present enactment is to the same effect, so that the limits of the authority of the hospital for the detention of such a person would not extend beyond the time when restoration to reason occurs, and the establishment of that fact.

"A person who has been acquitted of a crime on the ground of insanity and thereafter committed to an institution is entitled to his discharge on restoration to sanity, and, on asserting a recovery of his sanity, to have the question of such recovery duly determined. In the absence of a statute requiring it, the authorities of the institution wherein he is confined have power to discharge him without the order of a court.

"Ordinarily the statutes provide a procedure which may be followed to obtain the discharge, and, although such statutory remedies are not necessarily exclusive of other existing legal remedies, there must be a compliance with the statutory procedure where the statutory method of securing the discharge is followed." 44 C.J.S., Insane Persons, § 131.

"The right of a person acquitted of crime on the ground of insanity to be discharged from restraint on his restoration to sanity seems from the decided cases to be without question, but the means by which the release is to be accomplished does not appear to be the same in the several jurisdictions, the question being usually controlled by statutes, the provisions of which are not uniform. Habeas corpus is frequently allowed, although in some jurisdictions specific statutory remedies are held to be exclusive, and not merely cumulative, remedies as is true in other jurisdictions." 14 Am.Jur., Criminal Law, § 59.

Unlike other jurisdictions, our statutes make no express provision for the procedure to be followed to obtain the discharge of a person committed under § 546.510 who has since been restored to sanity. This is an omission which might well be called to the attention of the General Assembly.

In addition to § 546.510, there are other statutes prescribing procedure where a person indicted becomes insane before trial, §§ 545.750–545.760 as well as those dealing with insanity after conviction, §§ 549.040–549.050, but none of these sections have any real bearing on the present question. There is a section in the new Probate Code, § 475.360 which provides for a hearing as to the mental condition of a "person previously

**448**

adjudged to be incompetent or of unsound mind by any court in the state of Missouri" upon the filing of a verified petition "in the probate court of the county wherein he was adjudged incompetent or of unsound mind * * * alleging that subsequent to such adjudication he has fully recovered his mental health and been restored to his right mind and is now capable of managing his affairs," but it is not contended that this section is applicable to a person in petitioner's situation, there having been no former adjudication of incompetency or unsoundness of mind within the purview of that statute. But even if it were applicable, we think it would not be an exclusive remedy because under the facts here under inquiry the superintendent of the hospital and his staff believe the petitioner should no longer be held in custody, and under § 202.070 it is provided that "any patient so admitted may be discharged or paroled whenever in the judgment of the superintendent and his staff such person should be discharged or paroled." The superintendent is in readiness to discharge petitioner, but, in deference to the trial court and its order of commitment, he is witholding such action until this court determines the validity of the order, so this circumstance would not defeat habeas corpus in a situation such as that presently before us.

§ 546.510 does not purport to authorize the trial court in which an accused has been acquitted on the ground of insanity to retain jurisdiction to determine for itself in the future, by writ of habeas corpus or otherwise, whether the prisoner's sanity has been restored, and it being too plain for argument that the court did not have inherent power to append any such condition to an order under § 546.510, it follows that, to such extent, the same was unauthorized and unenforceable And it being conceded that petitioner is now legally sane, it follows that he is entitled to be discharged from the custody of the respondent. It is so ordered.

All concur.