STATE OF MISSOURI ex rel. JACOB M. WAT-
TENBARGER, Guardian, Relator, v. FRED
LAMB, Judge of the Circuit Court of Sullivan
County, Respondent.

**Kansas City Court of Appeals, June 30, 1913.**

1. **EXECUTORS AND ADMINISTRATORS: Guardian: Distribu-
tion: Pleading: Directions: Mandate.** The executor of an
estate paid several special legacies directed by the testator,
and distributed $5000 to each of the residuary legatees, children
of the testator, except a minor child. Her guardian filed a
petition in the probate court setting up those payments; and
settlements of the executor showing large cash balances in the
hands of the executor; and that his ward was the only child
and heir of one of the residuary legatees, and that he had died
a few weeks before his father, the testator; and that the child
took from her grandfather, a share equal to the shares of the
other residuary legatees. The executor filed an answer to this
petition, in which he did not deny any of the allegations
therein, and set up as the sole reason why the child was not
entitled to a distributive share that her father was indebted
to her grandfather, the testator, in a sum larger than her
distributive share would have been, and her taking from her
grandfather was through her father and subject to the latter's
debt to her grandfather. The probate court and the circuit
court, on appeal, adopted that view; but on appeal to the
Court of Appeals, the judgment of the circuit court was re-
versed and the cause remanded "with directions to find for the
plaintiff the sum shown to be due." It was *held* that such
directions' required the circuit court to enter judgment for
$5000 and interest, as being the sum shown by the record to
be due; and that an inquiry by such court, or the probate court,
was not proper.

2. **PLEADING: Appeal and Error: Reversing With Directions.**
When an answer in a cause admits or concedes a certain sum
to be due the plaintiff and that concession pervades the entire
record and, on appeal, the appellate court remands the cause
"with directions to find for the plaintiff the sum shown to be
due," such direction does not mean the sum shown to be
due by another investigation, but the sum shown to be due
by the record.

3. ————: ————: **Denial: Sole Cause: Confession and Avoid-
ance: Admission.** An answer which does not deny the allega-

tions of a petition showing plaintiff to be entitled to a distributive share of an estate, but sets up a certain sole and only cause why the plaintiff is barred of that right, is a plea in the nature of a confession and avoidance, and the avoidance failing, the confession stands. Such plea is a tacit admission of the claim, but for the special matter interposed.

4. **APPEAL AND ERROR: Reversal and Remanding: Authority.** When, on appeal, a judgment is reversed and the cause remanded with directions, the trial court has no authority to perform any other function than that directed, and it is improper for him to enter into an investigation of the matter litigated.

5. **EXECUTORS AND ADMINISTRATORS: Settlements: Distributees: Payments.** Where an executor by his several settlements showed a large cash balance in favor of the estate and showed that he had paid all residuary legatees but one, $5000 cash, as a first distribution, he will not be allowed to defeat a judgment and order that he pay that one her distributive share, by showing that such settlements were false in that he had paid the other distributees' shares by conveying land to the distributees, and that he had no cash as reported in his settlements.

6. **MANDAMUS: Appeal: Specific Judgment.** Mandamus will not be allowed to perform the office of an appeal and when there is a complete remedy by appeal the writ should be denied. But this rule presupposes there is a matter in question which is the proper subject of litigation. It does not apply to an instance where the circuit court refuses to obey the directions of a mandate to enter a specific judgment, as in such case the remedy is mandamus.

7. ————: ————: **Alternative Writ: Amendment.** If the alternative writ asks for more than can be given by the peremptory writ, the latter should not be granted. Though in such case an amendment might be made.

## Mandamus, Original Proceeding.

PEREMPTORY WRIT AWARDED.

*J. M. Wattenbarger, Calfee & Painter, E. M. Harber* for relator.

*A. W. Mullins* and *D. M. Wilson* for respondent.

ELLISON, P. J.—This is an original proceeding in this court whereby relator seeks, through our writ of mandamus, to compel respondent, as judge of the circuit court of Sullivan county, Missouri, to obey the mandate of this court issued in the cause of Wattenbarger v. Payne, reported in 162 Mo. App. 434. An alternative writ was issued and return thereto has been made. Relator, concluding that the return presented no defense to the alternative writ, has filed a motion for judgment that the writ be made peremptory.

The immediate question before us arose on relator's motion or suggestion in the circuit court to carry out the mandate of this court. The return discloses clearly the theory which has governed the action of the trial court throughout the proceedings. The order of this court, when the judgment was rendered was that the judgment of the circuit court would be reversed and the cause remanded to that court with directions to it ''to find for the plaintiff the sum shown to be due'' him as such guardian. The return shows a refusal to obey this direction and the reasons entertained in justification of the refusal. The reasons may be said to be two in number—one that this court did not determine that any sum was due the guardian—that it merely determined that she was entitled to the legacy left to her father, discharged of his indebtedness to the grandfather. The other was that it could not determine or pass upon the amount due relator, since the estate was yet in course of administration and the probate court was the only court which could carry out the mandate of this court and therefore it (the circuit court) ordered the case transferred back to the probate court with directions to the latter court ''to ascertain the condition of the estate, and find exactly what is the amount due this child and then enter judgment for it.''

The return shows that that court refused to follow the directions of the circuit court and that it proceeded

to make an order in the premises from which the executor appealed to the circuit court.  On this appeal evidence on part of the relator was heard, consisting of the original petition of the guardian in the probate court asking that the executor be required to pay him for his ward five thousand dollars, being the amount he had paid the other legatees; and the executor's answer to such petition; as well as the several settlements of the executor, together with the mandate of this court.

The evidence on the part of the executor was the will and his oral testimony. The return further showed that the court found the evidence of the executor was true and that it was not affected by the pleadings in the cause and the several settlements made by the executor.  The court considered that the petition and answer upon which the cause had been heard originally by the probate court and then, successively, on appeal, by the circuit court and this court, were not a concession that five thousand dollars was due relator's ward if she was not cut out by the indebtedness of her father to her grandfather. The court further found, as stated by the executor in his testimony, that he had not cash funds of the estate to exceed $150, and that the large balances shown in favor of the estate in his settlements were not cash, but were "notes and property."

The return then sets up a colloquy between the court and counsel immediately following the overruling of the motion, in which the court stated that in its opinion the probate court should ascertain what was due relator's ward and compel a settlement of the estate. Then counsel for relator said, "There can be no question under directions of the Court of Appeals but what this ward should have been paid $5000." The court answered: "The opinion may have been written on that assumption, but that wasn't the question presented, that wasn't the question being argued and

that question was not, as I find from the record, di-
rected to the attention of the court. If that was the
basis for the directions to this court, why then it was
without proper foundation, because the record doesn't
show any ascertainment as to the amount. If this case
had been tried in the probate court and that court had
found the amount due and that appeal was brought
here,'' etc.

The circuit court then again refused to follow the
directions contained in the mandate of this court and
again ordered the case transferred to the probate
court; whereupon relator, in behalf of his ward, insti-
tuted this proceeding.

It will be observed from the foregoing that the
respondent, as judge of the circuit court, did not con-
sider the right of relator's ward to the sum of $5000
had been adjudicated by this court; and as it had not
he, as such circuit court, could not do so, since that,
in his opinion, was the province of the probate court.
We have therefore undertaken to inquire if there is a
sound basis for that view. And first we will remark the
total misunderstanding of the directions of this court.
We did not cast upon the trial court the duty to try
and to determine what sum was due relator's ward.
That had clearly appeared from the start and as the
trial court had found against her we reversed the judg-
ment and directed that it find for her in the sum which
had been confessed to be due her.

When relator's appeal from the probate court to
the circuit court was heard by the latter, it could and
should have rendered any judgment on that appeal
which the probate court could and should have ren-
dered; and failing in that, this court, in the exercise
of appellate authority, could direct it to do so. What
the judgment of the probate court should have been,
under the law that the child took the legacy of her
father without being charged with her father's debt
to the testator, is made quite plain by the pleadings of

the parties. Relator's petition was filed in the probate court after the executor's second annual settlement had been made in which was shown partial distribution of the estate to the legatees in the will aggregating $28,189, of which, after paying all the special legacies, $5000 each was distributed to the children of the testator except this child's deceased father and a part of the share due Mrs. Kelly, a daughter, the balance of which the executor paid on the request of her attorney; and showing a net balance due the estate of $19,136.68, after taking credit for $2472.80 as five per cent commission on a total of over $49,000 appearing by such settlement to have passed through his hands up to that time. The petition, after proper allegation of the will and of relator's ward being the only child and heir of Daniel S. Payne, one of the testator's children and equal residuary legatee with the other children, and that he died a few weeks prior to the testator and that she (the ward) in consequence took from her grandfather (the testator) a share equal to that of the remaining children as residuary legatees, alleged the distribution to the others as set forth in the settlement and that she was entitled to a distributive amount equal to theirs, but that the executor refused to pay her. The prayer of the petition was as follows: ''Wherefore, this curator moves the court to order and direct said executor, Reuben Payne, to distribute and pay over to this curator, for the use and benefit of this ward, the said Ruth I. Payne, the sum of five thousand dollars and such other and further sum or sums as may be due her as legatee aforesaid, and for all proper orders in the premises.''

The answer to this petition was in the following words:

''Reuben Payne, executor of the will of Addison Payne, for his answer to the petition and motion of J. M. Wattenbarger, curator of Ruth I. Payne, for partial distribution, says that said curator is not at

this time entitled to the sum of $5000, nor to any sum whatever. For that because the said Ruth takes not by inheritance of her grandfather, the said Addison, seeing that he died testate, but by virtue of the statutes in such cases made and provided, takes the estate that her father, Daniel S. Payne, a devisee in said will, would have done had he survived the testator, and not otherwise. And for that because her said father, if living, would not be entitled to any distributive share of said estate, nor to his devise or legacy under said will, because his estate is indebted to the estate of the said Addison in an amount largely in excess of what his distributive share, devise or legacy would be, to-wit, in an amount exceeding the sum of $7000. Wherefore the said executor prays the court that said motion be overruled and said petition denied, and the costs of this proceeding be taxed against the petitioner.''

These pleadings show clearly an allegation of $5000 being due relator's ward as her distributive share under the partial distribution set out therein; and they show a denial of that claim only for the reason that her deceased father, as original legatee, died owing the testator more than his legacy, and for *that* reason *only* the court should refuse to order him to pay her as he had the others. The specific sum alleged to be due stood confessed, unless it was cancelled by the debt her father owed the testator which was set up as *the* reason he had not paid her as he had the others. So, on appeal to the circuit court, the facts were agreed upon in which the sole defense claimed was that the ward was not entitled to the $5000 claimed, on account of her father being indebted to the testator. And so the trial judge understood it, for it is recited in the judgment itself that the court, ''after being fully advised in the premises, doth find that the estate of Daniel S. Payne, the father of the minor Ruth I. Payne, is insolvent and that the said estate is in-

debted to the estate of Addison Payne, Sr., in an amount in excess of the distributive share of the said Ruth I. Payne, in said estate, to-wit, in the sum of $6900. It is therefore ordered, adjudged and decreed by the court that the petition of the plaintiff praying that the executor distribute and pay over to him for the use and benefit of his ward the sum of $5000, be and the same is hereby denied and the said petition dismissed, and the costs,'' etc. Thence, the case was brought to this court on appeal wherein the entire face of the record is a concession that the sum of money ($5000) paid to the other residuary legatees should be paid to this relator for his ward unless her claim was nullified by the indebtedness of her father to the testator. This was answered in the opinion of this court reversing the judgment of the circuit court, directing that court "to find for the plaintiff the sum shown to be due." Not a sum to be shown to be due— not what the result of further litigation might thereafter show to be due—but what the record then present before us showed to be due, viz., $5000 and interest.

The extreme length to which the executor went in his effort to avoid the legitimate result of his defeat in the litigation between himself and relator, well illustrates the frailty of his reasoning and the absurdity of his claim. He testified that notwithstanding he had made four annual settlements in the probate court, each of which showed a large cash balance of many thousands of dollars in his hands belonging to the estate, after deducting the distributions mentioned and his commission of five per cent on $49,416.76 (the one at the time relator asked for his ward's share showed $19,136), yet that he had no cash save perhaps $150. That though he reported sales of real estate ostensibly for cash at prices ranging from $23,460.80 down to $950, that this was sold on time and notes taken for the principal part of the purchase money.

And that notwithstanding he reported in such settlements, sworn to by him, that he had paid out the distributive shares aforesaid, he had in reality conveyed real estate to the legatees, for such shares, taking their notes for the excess of the purchase price over the distributive shares.

He was thus allowed to traverse his sworn settlements—his pleading—his continued admission throughout the length of the litigation. He was allowed to show that white was black, that cash was credit, and that a prosperous estate with large cash balances, was a myth. These things should not have concerned the trial court. The executor had chosen his ground and laid out his course without that court's knowledge and it is in nowise responsible for his action except to see that he abides by it. The executor, if he had any reason, aside from the legal question, for refusal to pay over this child's share, should not have held it back and relied upon only one as the reason he had not paid her. He cannot be allowed to divide up his different defenses and demand that relator shall sue him as many times as his defenses may number. One case should end the controversy over all matters then existing. [Emmert v. Aldridge, 231 Mo. 124; Spratt v. Early, 199 Mo. 491, 500; Donnell v. Wright, 147 Mo. 639, 647.]

Though the original case was in the probate court, formal pleadings were filed and his plea does not deny (nor, as we have shown, was there ever any denial) generally or specially, the allegations of the petition setting up the ward's right to the distributive share paid the others. It is stated in such plea that she was not entitled to the sum of $5000 "for that because" she did not take from her grandfather testator by inheritance, but from her father by virtue of the statute; "and for that because" her father, if living, would not be entitled to a distributive share on account of his indebtedness to the testator, she being only entitled

to her father's interest. His plea was, practically, a confession and avoidance and his avoidance having failed, his confession stands. His plea was a tacit admission "that independently of the matter disclosed in the answer, the plaintiff would have a right of action." [1 Chitty on Pleading (16 Ed.), star pp. 551-558; Phillips on Code Pleading, secs. 240, 235, 69-71; Bliss on Code Pleading, sec. 340.]

These views show that the trial court has misunderstood the direction given to the circuit court in the words "to find for the plaintiff the sum shown to be due," else it doubtless would have immediately rendered judgment that the executor distribute and pay over to the relator for the use of his ward the sum of five thousand dollars and interest from the day (at least) of relator's petition to the probate court. This misunderstanding of the direction of this court probably arose from the fact that the personnel of the trial court changed, the newly elected judge who received the mandate not being the judge who tried the case. These views also relieve the case of the embarrassment suggested by the trial court in it being required to enter into a trial and investigation as to the sum due the ward. That, as has been herein explained, has been all along ascertained and admitted. And when it received the mandate of this court, it had no power or authority to go outside of or beyond the directions given, or to do otherwise than as therein required to do. [Stump v. Hornback, 109 Mo. 272, 277; Rees v. McDaniel, 131 Mo. 681; Fanning v. Doan, 146 Mo. 98.]

But it is suggested that the return shows another matter which should deprive relator of the right to demand that the circuit court comply with the directions of this court. Which matter is stated to be the right to appeal; and that when the circuit court refused to comply with such directions and transferred

the case to the probate court with directions for that court to comply with the mandate of this court, relator did not appeal. And that on the executor's appeal to the circuit court from the probate court's order, relator moved to dismiss the appeal and afterwards to strike it from the docket and for the court to proceed to obey the mandate of this court, and when these motions were denied relator did not appeal therefrom, but began the present proceeding.

It is true that mandamus will not be permitted to perform the office of an appeal, and does not lie when an appeal affords a remedy (State ex rel. v. Fort, 180 Mo. l. c. 108, 109; State ex rel. v. Lubke, 85 Mo. 338; State ex rel. v. Buhler, 90 Mo. 560; State ex rel. v. County Court, 109 Mo. 248); and will not be issued to compel a certain judgment to be rendered. [State ex rel. v. Smith, 105 Mo. 6.]

But these rules of law are founded on the assumption that the matter in controversy is a proper subject of trial and judgment thereon in the tribunal complained of. If it were necessary to appeal from the refusal of a judicial tribunal to perform its duties in relation to matters already fixed, determined and adjudicated, the use of the writ of mandamus would be greatly lessened and its benefits much curtailed. In instances like the present, the interested party would be denied the privilege of suggesting to the court that it carry out directions given by an appellate court, except upon condition that he forfeit his right to mandamus in case of refusal. Certainly the continuous and persistent insistence of the relator that respondent perform the directions of this court ought not to bar him of the only effective remedy left him. If peremptory directions of an appellate court to a trial court must become the subject of trial and readjudication in that court and another appeal taken, and then another, where would be the end?

It is also said that a peremptory writ should be denied for the reason that the alternative writ, which included the petition therefor, asks for more than relator has shown himself to be entitled to. [State ex rel. v. Railroad, 77 Mo. 143; State ex rel. v. Police Commissioners, 80 Mo. App. 206; State ex rel. v. Field, 37 Mo. App. 83.] But we do not find this to be the fact. The petition is full and does refer to ''such further sums,'' in addition to the $5000, which may have been distributed by the executor to the other heirs. But this is immediately followed by allegations that no further distributions have been made. So that the alternative writ, in fact, only asks that respondent enter judgment for the $5000 determined to be due the relator as guardian and the interest thereon. Though we have authority to permit an amendment (School Dist. v. Landerbaugh, 80 Mo. 190) we think it unnecessary.

The motion for judgment will therefore be sustained, and since the sum shown to be due in the original case was five thousand dollars, and since interest should run on that sum, at least from the 10th of February, 1910, the time of filing relator's petition in the probate court asking that that sum be distributed and paid to him for his ward, we will direct that a peremptory writ be issued commanding respondent to enter judgment in favor of relator for that sum of money with interest at six per cent per annum from that date. The other judges concur.