STATE ex rel. C. P. MILLS, et al., Relators, v. ISAAC TURNAGE, et al., Respondents.*

In the Kansas City Court of Appeals, June 16, 1924.

1. **MANDAMUS: Pleading: Relief Asked in Petition Only Relief That Can be Granted on Final Hearing.** In a proceeding in mandamus *held* the relief asked in the petition is the only relief that can be granted on a final hearing.

2. ————: **Discretion: Board of Education Will not be Compelled to Open High School Building Where in the Exercise of Its Discretion It Determined There was no Suitable Building or Funds to Warrant Same.** Board of Education of consolidated school district will not be compelled to open a high school in the district where in the judgment of its members, which was discretionary, there was no suitable building, and the funds were insufficient to justify it, even though section 11263, Revised Statutes 1919, contemplates the acquisition by the district of a central high school building.

*Headnotes 1. Mandamus, 38 C. J., Section 597; 2. Mandamus, 38 C. J., Section 331.

Proceeding in Mandamus by the State on the relation of C. P. Mills and others, against Isaac Turnage and others, constituting Board of Education of Consolidated School District No. 38, DeKalb County.

ALTERNATIVE WRIT QUASHED AND PROCEEDINGS DISMISSED.

*Ellis G. Cook* and *E. G. Robinson* for relators.

*J. W. Sullinger* and *Hewitt & Hewitt* for respondents.

BLAND, J.—This is an original proceeding in mandamus brought by certain resident taxpayers in Consolidated School District No. 38, DeKalb County, Missouri, against the defendants who constitute the Board of Education of said school district. In their petition relators pray that a writ of mandamus be issued forthwith to require said defendants to ''open, operate and maintain'' a high school in said district. The alternative writ was issued by this court requiring of the defendants—
''. . . that you do without further delay or excuse immediately on the receipt of this writ, open and maintain the high school in the Consolidated School District No. 38, in DeKalb County, Missouri, forthwith or that you show cause . . . why you should not do so.''

The respondents filed a return to the alternative writ raising issues of fact. This court appointed the Hon. W. S. Herndon of the Clinton County Bar as special commissioner to take the testimony and report his findings of fact and conclusions of law, which he has done and has recommended that the alternative writ should be quashed and the proceeding dismissed. The relators have filed their exceptions to the commissioner's report and the case has been argued and submitted. The commissioner found that there are no adequate building or buildings in the district in which to conduct a high school and that there are not sufficient funds available to conduct the seven elementary schools in the district for a period of eight months and at the same time conduct a high school. It was the opinion of the commissioner that while the law provides for the conducting of both kinds of schools there were insufficient funds to do so and that the respondents were justified in their contention that they were required to conduct the elementary schools in preference to a high school.

The facts show that in April, 1920, the qualified voters of the community consisting of seven common school districts in DeKalb County organized a consolidated school district, since known as Consolidated School District No. 38. The consolidated district contains thirty-six square miles of territory and the assessed valuation of the property therein is $2,065,820. The territory included in the district is a strictly rural community. Fairport, located near the center of the district, is an unincorporated village and the only town therein. Prior to the consolidation there were seven school buildings and these are now the only school buildings owned by the district or provided by the district for school purposes, the Board of Education never having taken any steps for the erection of a high school building. The elementary schools are maintained in each of the original common school districts and in the same school houses.

State ex rel. v. Turnage.

Soon after the organization of the district the Board of Education employed Prof. Meek to teach a high school in the district for the year beginning July, 1, 1920, and ending June 30, 1921. Prof. Meek taught this school at Fairport for nine months but in what building the evidence does not disclose. He received for his services eight warrants of $150 each, but none of these were paid, for the alleged reason of "no funds." He afterwards obtained a judgment against the district on these warrants, which is unpaid. The high school during its first year was aided by private funds. Prof. Meek also taught this school for the years 1921 and 1922 but his salary for this year was paid by the patrons of the school. There was no evidence of any high school being taught for the year 1922-1923.

At the annual election in 1923 a levy was made of forty cents on each one hundred dollars for the assessed valuation of all property in the district for school purposes for the school year beginning July 1, 1923, and ending June 30, 1924. On June 29, 1923, the respondents applied for State aid, stating in their petition "that the district had provided adequate buildings for school purposes; that we will during the ensuing year maintain an approved High School." There upon $800 was set aside by the State authorities for the benefit of the district to be paid when the high school had been organized and approved. The school board endeavored to employ a high school teacher but by reason of the fact that the proposal was to employ one for only one month at a time, none of the applicants would accept employment. Subsequent to the annual election in April, 1923, upon a petition being signed by a number of taxpayers and school patrons of the district, the board called an election for the purpose of submitting a proposition to levy an additional twenty-five cents for *high* school purposes. The proposition was voted down by a large majority.

On the first Monday in September, 1923, the beginning of the school term, the County School Commis-

sioner having learned that nothing had been done by the Board of Education to provide for a high school in the district, took it upon herself to employ Prof. Miller, a duly qualified high school teacher and began the teaching of a third class high school in a store building at Fairport. A representative of the State Superintendent of Schools approved this school as a third class private high school, and it is still being maintained with an attendance of twenty pupils in the first and second year grades. Respondents had no hand in the opening and maintenance of this school and refused to take it over or recognize it in any way. Prof. Miller testified that he was receiving no salary, was upon his own expenses and would remain and teach the school ''as long as they will let me.''

A witness for the relators testified that the number of children of high school age in the district entitled to high school privileges were sixty-nine. Respondents introduced evidence tending to show that there were eighty-five. Relators introduced the evidence of several witnesses to the effect that a suitable building could have been rented by the respondents in which to conduct a third class high school, the character of school that they asked for. The buildings designated were a store building and the second story of a brick building in Fairport. The store building was clearly unsuitable and the second story hall had but one way of ingress or egress, a covered wooden stairway, six feet wide, leading from the outside. The hall had three windows in the front and two on each side. There was a drug store of unsavory reputation located on the first floor. There were no toilets, in fact nothing there but a bare hall. Relators had examined this hall, prior to the issuance of this writ, for the purpose of determining its fitness for a high school and had rejected it, finding that it was not fit for such purpose. Prof. Richardson, State High School Inspector, testified that with some slight repairs this hall would make a suitable place for a high school.

Relators further contended that a grade school build-ing a short distance south of Fairport, this being a school building owned by the Fairport School District prior to the consolidation, could be so altered as to take care of the grade students and the high school pupils as well. This building contained two rooms, each having dimen-sions of twenty-seven feet, three inches by thirty-two feet, six inches; a third room eleven feet by twenty-three feet that the evidence shows could have been used for an agricultural laboratory; and another room of the same size as the last-mentioned one, this last room being the entrance to the two main rooms. There were fifty pupils eligible to attend the elementary grades in this building, however, only forty-five were attending; twenty-eight in one of the two larger rooms and seventeen in the other. It was proposed that a partition be put across the center of one of these large rooms making two rooms of the one, each sixteen feet by twenty-seven feet, three inches in size. It was proposed to put the grade pupils in these two rooms and use the other larger room for high school pupils. Prof. Richardson, testifying for relators, stated that it would require fifteen square feet of space for each high school pupil. A simple arithmetical calculation will show that the larger room would not have been of suffi-cient size to accommodate sixty-nine high school pupils.

As to the funds available to conduct the elementary grade schools together with the high school, the evidence shows that at the beginning of the school year, 1923-1924, the district had on hand $2679.23, and this, together with the other revenue that the district had for that school year made a total sum of $12,353.51. The salary of the eight ward school teachers was $5920. The Board of Education at the time the testimony was taken had paid in repairs and incidentals for the school year the sum of $1769.85 and our Commissioner estimates that there would be need of a future expenditure of $1,000 for in-cidentals. The partition proposed for the room in the Fairport building would cost $300. Sixty-nine seats for

the high school pupils would cost $8 each, or a total of $552. To provide a high school for sixty-nine pupils would require two teachers, one at a salary of $175 a month and one at $125 a month, making a total of $2400 for the school year. The salary of the school treasurer was $50 per year and the commission of the county collector was $200, and the Meek judgment amounted to $1200, making a total expense for the conducting of the two kinds of schools, and paying the obligations of the district, of $13,391.85.

Under section 11264, Revised Statutes 1919, the district was entitled to the sum of $800 in State aid when an approved high school had been maintained. The aid provided by section 11295, Revised Statutes 1919, would amount to $200, but this is only given where it is shown that the district maintains an approved high school. The district was not maintaining a high school so was not entitled to these aids from the State. It is readily seen that it is a very serious matter as to whether the district had sufficient funds, when our writ was issued, for the purpose of supporting a high school in addition to the elementary schools.

The relators contend that as the evidence shows that the district had enough money at the opening of the school year 1923-1924 to start both kinds of schools, under the statute relating to consolidated school districts and the decision of this court in the case of State ex rel. v. School District No. 5, 195 Mo. App. 507, the Board of Education was required to start both kinds of schools and that the elementary schools had no preference over the high school. In that case we hold that a consolidated school district is not only under the necessity of maintaining elementary schools but must provide a high school and as the evidence showed that an election had been held in the district for the purpose of establishing a consolidated high school and the voters had refused to vote the taxes necessary for that purpose, we held that the corporate franchise of the district should be forfeited

and the school directors ousted. Our decision annulling the organization of the school district for failure to maintain a high school, was criticised in the case of State ex rel. v. School District No. 2, 275 Mo. 522, 528. There was no question present in that case before us as to what would be the duty of the Board of Education in reference to maintaining a high school when there are insufficient funds to conduct both the elementary and the high schools. Nor do we think that it is necessary for us to pass upon that question in the case at bar, as will be hereinafter shown.

Relators in their argument attacked the board of directors for submitting a proposition to vote twenty-five cents for *high* school purposes instead of for general school purposes, contending that there is no authority in the law for submitting a levy for any purpose except general school purposes. However, we need not go into the matter for the reason that this proceeding is not for the purpose of requiring the respondents to provide revenue for the purpose of maintaining a high school, but the petition merely prays for an alternative writ requiring the respondents to forthwith open and maintain a high school. It is well settled that "the relief asked in the petition is the only relief that can be granted on a final hearing." [State ex rel. v. Railway, 199 Mo. App. 668, 672; State ex rel. v. Holladay, 65 Mo. 76; School District No. 11 v. Lauderbaugh, 80 Mo. 190.]

We are not disposed to disagree with our learned commissioner in his conclusion that no suitable place was shown for the conducting of a high school in the district. The respondents, or at least some of them, testified that no suitable building in their judgment could be obtained by them in which to conduct the school and this was after they had examined into the various suggestions as to places where a high school might be conducted. Now it must be admitted that the board of directors had some discretion in the matter of passing upon the suitableness of a building for the purpose of

conducting a high school. Mandamus is not for the purpose of reviewing discretionary matters. [State ex rel. v. Jones, 155 Mo. 570.] It will hereinafter be disclosed that it must be that respondents are personally opposed to the establishing of a high school, but even this fact does not deprive them of their right to use their discretion in the matter of selecting a suitable place for the holding of the school, at least in the absence of a showing that their discretion has been exercised in an arbitrary and unjustifiable manner. Under the testimony relating to the matter of whether there is a suitable place in the district in which to hold the high school, we do not think that we would be justified in saying that the respondents ought to be required by mandamus to immediately open a high school in the district.

Our commissioner criticises the Board of Education, some of whom at least were members of the Board during prior years, and we think justly so. There is no doubt but that the consolidated school district law provides for the maintenance of a high school therein. The statute, section 11263, Revised Statutes 1919, contemplates the acquisition by the district of five acres of ground and the erection thereon of a central high school building, and provides when the district erects such a building therein described, the State will pay one-fourth of the cost thereof, the State's share not to exceed $2000. Section 11264 provides that when adequate school buildings for school purposes are provided, the State will grant a special aid of $25 per year for each square mile or fraction thereof in area of the district, provided the district maintains an approved high school of at least the third class, etc. Such aid not to exceed the sum of $800. Neither the respondents nor any of their predecessors, so far as the evidence shows, have ever done anything toward carrying out the provisions of section 11263; they have never selected a site for such a high school building or adopted plans for such a building with estimates of cost and submitted same to the voters of the district for their

approval or rejection, nor have they asked them to vote bonds or provide taxes to pay for the construction of such a building. It seems that this school district has wholly failed to carry out one of the principal purposes of its organization. It has no high school. It still maintains the seven separate grade schools, some of them having more pupils than the others, one of the seven schools having two teachers. Commenting upon the situation the commissioner says—

"The assessed valuation of each separate district, composing Consolidated No. 38, was not shown, if it could have been, yet they all pay the same tax of forty cents, while some of these districts might enjoy the same school facilities, on a levy of much less than forty cents."

It is a sad commentary on conditions in this district that a stranger, who, apparently, is actuated alone by purely philanthropic motives, is carrying on the work that the district in defiance of at least the spirit of the law, refuses to do. The condition existing in this district was never contemplated by the law and should be remedied, but we know of nothing that we can do in this proceeding to bring about a much needed change, that is, the maintenance of a high school. The petition merely seeks to have the respondents forthwith open and maintain a high school in the district and the evidence concerning the availability of any place suitable for the holding of such a school does not justify us in awarding the peremptory writ. Of course, we are not at liberty to disagree with the Board of Education in its failure or refusal to oust the grade school pupils from one of the grade school buildings, *or rooms therein,* for the purpose of conducting a high school therein. [State ex rel. v. Hackmann, 245 S. W. 553, 554.]

The alternative writ is quashed and the proceeding dismissed. All concur.