Donovan Michael **KELLETT**, Petitioner,

v.

**UNITED STATES** of America,
Respondent.

No. 11749.

United States District Court
W. D. Missouri, W. D.

June 6, 1958.

Donovan Michael Kellett, pro se, for petitioner.

Edward L. Scheufler, U. S. Atty., Clark A. Ridpath, Asst. U. S. Atty., Kansas City, Mo., for respondent.

R. JASPER SMITH, District Judge.

Petitioner presented here on May 8, 1958, a petition for writ of habeas corpus, contesting the validity of his detention by federal authorities, and moved for leave to proceed in forma pauperis. On the same day I permitted petitioner to file his petition in forma pauperis, and then ordered respondent to show cause why a writ of habeas corpus should not issue as prayed by petitioner's application. The United States Marshal, who

is presently detaining petitioner in federal custody, was ordered not to remove petitioner from the Western District of Missouri until the Court adjudicated the merits of petitioner's application for a writ. Respondent has now responded to the Court's order to show cause, and urges denial of the writ.

Gathered from petitioner's application and the documents attached to respondent's response to the show cause order, the facts are these: On September 15, 1954, petitioner, after a plea of not guilty, was convicted by jury of a violation of Section 2553(a), Title 26 U.S.C.A., Internal Revenue Code of 1939, (now Section 4704(a), Title 26 U.S.C.A.) more commonly known as the Harrison Narcotic Act. Upon conviction, the U. S. District Court for the Northern District of Texas sentenced petitioner to the custody of the Attorney General for a period of two years. Petitioner appealed his conviction and sentence to the U. S. Court of Appeals, Fifth Circuit, and pending his appeal, he was released on bond upon condition that he surrender himself in execution of the judgment and sentence upon disposition of his appeal.

Thereafter, while free on bond, and while his appeal was still pending, petitioner was arrested in Ardmore, Oklahoma, by the F.B.I. and local police officers on a warrant issued pursuant to a complaint filed on September 21, 1954, with the United States Commissioner for the Western District of Missouri, Western Division, charging petitioner with violation of the Fugitive Felon Act, Section 1073, Title 18 U.S.C.A. The complaint charged that on or about September 20, 1954, petitioner did knowingly, unlawfully and feloniously travel in interstate commerce from Kansas City, Missouri, to Johnson County, Kansas, with the intent to avoid prosecution for the crime of robbery. The charge of robbery was one on which petitioner was wanted and sought by the Kansas City, Missouri Police Department.

After his arrest in Ardmore, which occurred about October 2, 1954, petitioner was taken immediately to Ada, Oklahoma, for appearance before a U. S. Commissioner, and then transported for confinement to Muskogee, Oklahoma, in lieu of $10,000 bond. Upon being advised that he was in the custody of the U. S. Marshal for the Eastern District of Oklahoma, the State of Missouri instituted extradition proceedings for petitioner. The federal authorities, in view of the extradition proceedings, voluntarily surrendered petitioner to Missouri law enforcement officials, and subsequently dismissed their complaint under the Fugitive Felon Act.

Petitioner was returned to Missouri, and confined in the Jackson County, Missouri jail. On February 2, 1955, while petitioner was still incarcerated in the county jail, the appeal of his federal conviction and sentence imposed in Texas was dismissed by the Court of Appeals. Upon notification on February 10, 1955, of the appellate court's order of dismissal of petitioner's appeal, the sentencing court, U. S. District Court for the Northern District of Texas, after petitioner's failure to surrender himself within five days, forfeited his appeal bond and issued a bench warrant ordering any U. S. Marshal to arrest petitioner and forthwith deliver him to any prison or place of detention authorized by the Attorney General for imprisonment in accordance with that court's previous judgment and commitment.

On April 18, 1955, having been in the continuous custody of Missouri authorities since shortly after his arrest and apprehension on October 2, 1954, petitioner was brought to trial on a charge of armed robbery, found guilty and sentenced by the Jackson County Circuit Court to five years in the Missouri State Penitentiary. On May 10, 1955, he was moved to that institution to begin service of his term of imprisonment.

On May 8, 1958, after having served his state sentence, petitioner was released from the Missouri Penitentiary. However, he immediately was taken into custody again by the U. S. Marshal for this district, pursuant to the bench war-

rant dated February 17, 1955 and the judgment and order of commitment issued by the U. S. District Court in Texas. It is the validity of this current federal detention upon his release from state authority which petitioner is attacking in his application for a writ.

Petitioner contends in support of his application, if I comprehend his contentions properly, that he has in fact served his federal sentence of two years imposed in Texas because he was not taken into federal custody at the time of the dismissal of his appeal in the Court of Appeals and the issuance of the bench warrant, and the respondent's failure to execute the warrant, even though petitioner was in state custody, and to insist that the sentence imposed by its own court be first executed is a violation of his constitutional rights. He further urges that upon dismissal of his appeal and issuance of the bench warrant it became the duty of the United States Marshal to obtain or attempt to obtain custody of petitioner for the execution of the federal sentence; that by not executing the order of the Texas court literally the Marshal was remiss in his duty; and that the legal effect of the Marshal's failure to comply literally with the terms of the order is the concurrent running of the federal and state sentences.

The issue raised by petitioner's application is whether the petitioner commenced the service of his federal sentence on February 2, 1955, the date on which his appeal was dismissed by the Court of Appeals or even February 17, 1955, the date the bench warrant was issued, as he contends, or whether the service of the sentence commenced on May 8, 1958, the date on which he was surrendered by state prison officials to the U. S. Marshal, as the Government contends. Concededly, if petitioner's sentence began to run on February 2, 1955 when his appeal was dismissed, or even February 17, 1955 when the bench warrant issued, writ of habeas corpus should issue. However, if it commenced to run on May 8, 1958, according to the respondent's contention, when for the

first time since the dismissal of his federal appeal, the federal authorities had the opportunity to take actual physical custody of petitioner, then the writ should be denied.

The problem here involved is one of interplay and adjustment between state and federal sovereignties in the exercise of the power of each to enforce and vindicate its laws. Under our unique dual system of state and federal courts, questions such as petitioner now raises have repeatedly arisen in the past and are certain to arise in the future as the exercise of concurrent jurisdiction of each set of courts is asserted against a defendant who has violated the laws of each sovereign. The situation has created manifold conflict, and remains fraught with potential possibilities of future conflict. Yet, it is imperative that each system of law enforcement be effective. This effectiveness is achieved by a resolution of the conflict through intelligence, mutual assistance and courtesy. Chief Justice Taft aptly stated the problem in Ponzi v. Fessenden, 258 U.S. 254, 42 S.Ct. 309, 310, 66 L.Ed. 607, when he observed:

"We live in the jurisdiction of two sovereignties, each having its own system of courts to declare and enforce its laws in common territory. It would be impossible for such courts to fulfill their respective functions without embarrassing conflict unless rules were adopted by them to avoid it. The people for whose benefit these two systems are maintained are deeply interested that each system shall be effective and unhindered in its vindications of its laws. The situation requires, therefore, not only definite rules fixing the powers of the courts in cases of jurisdiction over the same persons and things in actual litigation, but also a spirit of reciprocal comity and mutual assistance to promote due and orderly procedure."

A recent effort to attain clarity and establish principles in a specific area of this general problem has been made by

the United States Court of Appeals for the Ninth Circuit, sitting en banc, in the case of Strand v. Schmittroth, 251 F.2d 590, 599. Although the factual situation of that case deals with the immunity of a federal probationer from state prosecution, I discern no real distinction between a federal probationer and a felon convicted by a federal court and released on bond pending appeal, at least as far as it concerns the applicability of the principles of the case to the merits of petitioner's application.

■ According to the Strand case, the reasoning of which provides the appropriate solution to the case before me, the controlling factor in determining the power to proceed as between contesting sovereigns is the actual physical possession of the accused. As expressed by Judge Fee, delivering the opinion of the Court:

"The power of the courts to adjudicate and sentence and of the authorities to imprison is based thereon. The reason is obvious. Where the body of the accused is in manual possession of one sovereign, surrender can be obtained by another such sovereign only by consent of the first or by force. The latter is unthinkable."

■ With this factor in mind, I consider the facts before me. Petitioner was arrested, tried and convicted by federal authorities for violation of the Harrison Narcotic Act, and during this time unquestionably was in the actual physical custody of the federal court in Texas. However, subsequent to his conviction and pending his appeal to the Court of Appeals, he was released on bond. Upon his release, petitioner was no longer in the actual physical custody of federal authorities. And not being in that custody, he was not immune from arrest and prosecution by another sovereign.

"When a defendant or a parolee or a probationer is released from actual physical custody, even for temporary purposes, he may be arrested, tried and convicted by any other such sovereign in the territory in which he may be without the consent of the first sovereign, which may have a judgment against him * * * or which may be seeking to try him.

* * * * * *

"Even though a person has been physically seized, his body must be held in manual custody. Otherwise, the officers and the court may lose jurisdiction of his person. If defendant escapes, is released on bail or probation or parole and does not present himself in court, the proceedings must, in strict construction, cease. The only method by which the tribunal may reassert jurisdiction is by 'arrest.' In the meantime, if the accused comes within the territorial jurisdiction of another sovereign, the latter may seize his body and continue him in physical custody if he be accused of an offense against the peace and dignity thereof. Seizure of the body by the latter postpones all claims based upon prior initiation of the proceedings or previous arrest by another sovereign until in some way possession may be resumed by the latter. If the accused be free in the territorial limits of a sovereign, he may be seized lawfully if so accused.

"A multitude of cases indicate that, if the accused be brought personally before a court which has jurisdiction of the subject matter, he may be tried, convicted, sentenced and imprisoned. It makes no difference by what means, rightful or wrongful, his body was brought into court. It is immaterial that he is on bond to appear for trial in another court. It is of no consequence that he may have escaped from the prison of another sovereign or may have violated the order of probation of the court of another sovereign. The consent of no other sovereign is essential to the validity of the proceeding. The objection of no other sov-

ereign is effective." Strand v. Schmittroth, supra.

While petitioner was in lawful state custody, and prior to his trial on the state charge for which he was held, the Court of Appeals entered an order dismissing his appeal. Upon notification of the dismissal of the appeal, and petitioner's failure to surrender himself for execution of his sentence, the sentencing court in Texas issued a bench warrant for his arrest. This was the first opportunity since petitioner's release on appeal bond that the federal authorities had to reassert jurisdiction over petitioner and attempt to gain possession of him. Certainly the Federal Government could not have demanded possession of petitioner at the time of his arrest in Ardmore because of any right to possession under his narcotic conviction, so long as his appeal bond was not cancelled. Mitchell v. Boen, 10 Cir., 194 F. 2d 405. It could of course have retained custody on the charge under Section 1073, Title 18 U.S.C.A.; but it chose to relinquish its paramount right to proceed and consent to state prosecution by dismissing its fugitive charge and surrendering petitioner, under extradition proceedings, to the State of Missouri.

At the time of the issuance of the bench warrant, petitioner was and had been in the continuous custody of the State of Missouri. Without doubt, the State could have exercised the doctrine of comity and yielded petitioner to the U. S. Marshal for service of the federal sentence.

> "It is well established that a sovereign, which has the paramount right to proceed with trial and sentence and which at the time has custody of a defendant, may yield up the body to another sovereign and consent to trial of the defendant upon a subsequent charge by the latter and, of course, upon a prior charge. Likewise, where the defendant in a proceeding in a tribunal is a parolee, probationer or on bail from another jurisdiction and court, the sovereign in whose court the right to proceed

> is lodged by possession of the body or otherwise may nevertheless yield to the officers of another sovereign." Strand v. Schmittroth, supra [251 F.2d 595].

See also Vanover v. Cox, 8 Cir., 136 F.2d 442; Lunsford v. Hudspeth, 10 Cir., 126 F.2d 653; Rohr v. Hudspeth, 10 Cir., 105 F.2d 747; and Zerbst v. McPike, 50 Cir., 97 F.2d 253.

The State did not yield, nor did the Federal Government assert any objection, as far as is indicated by the facts before me, to the retention of the petitioner by the State. Certainly no force was asserted by federal authorities; on the contrary, they made no attempt to contest state custody and in fact acquiesced when they placed merely a detainer on the petitioner in the hands of the state authorities. The State of Missouri retained custody of petitioner until May 8, 1958, at which time state jurisdiction and custody were terminated. It then became the duty of the U. S. Marshal to execute the bench warrant issued by the Texas federal court. This was done, and in accordance with the provisions of Section 3568, Title 18 U.S.C.A., petitioner's federal sentence of two years began to run. Strewl v. McGrath, 89 U.S.App.D.C. 183, 191 F.2d 347; Rohr v. Hudspeth, supra. Section 3568, supra, reads:

> "The sentence of imprisonment of any person convicted of an offense in a court of the United States shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of said sentence.

> "If any such person shall be committed to a jail or other place of detention to wait transportation to the place at which his sentence is to be served, his sentence shall commence to run from the date on which he is received at such jail or other place of detention."

 There can be no question but that the act of federal acquiescence to state custody of petitioner can be initiat-

ed or countenanced by either the affirmative or negative action of the U. S. Marshal. Federal acquiescence need not take the form of a formal order of the courts of that sovereign. McIntosh v. Looney, 10 Cir., 249 F.2d 62. The petitioner, by his wrongful acts while free on bond pending his appeal, made it impossible for the United States to retake him upon disposition of the appeal. His federal sentence was tolled until he could be retaken by federal authorities. Under these circumstances, petitioner's federal sentence could not have run during the time he was in state custody and he is not entitled to have his state sentence or any part of it computed as service of his federal sentence. Miller v. Zerbst, D.C., 21 F.Supp. 1015.

■ Even if I should assume—and I do not—that the state violated a duty it owed to the Federal Government under the rule of comity, the state detention being a breach of comity between state and federal sovereignties, the petitioner would not be entitled to release, because he suffered no injury thereby. Only the sovereign may raise objections to the interference with its right to the possession of a prisoner, under the rule of comity. So long as petitioner owes a sentence of servitude to each sovereign, he may not complain of the manner in which he is required to serve it. Haywood v. Looney, 10 Cir., 246 F.2d 56; Mitchell v. Boen, supra; Stamphill v. United States, 10 Cir., 135 F.2d 177; Powell v. Sanford, 5 Cir., 156 F.2d 355; United States ex rel. Demarois v. Farrell, 8 Cir., 87 F.2d 957.

Positively, such a breach of comity, if a breach existed, does not violate petitioner's constitutional rights. As stated by Justice Sutherland in Morse v. United States, 267 U.S. 80, 45 S.Ct. 209, 69 L. Ed. 522:

" * * * if there be a violation of the rule of comity here, it prima-

rily concerns only the courts or the sovereignty which is their common superior, and cannot avail the appellants indicted for crimes in the different jurisdictions. Moreover, their constitutional rights are not affected; and if there was error in any respect, it is not reviewable on habeas corpus."

To the extent that the case of Grant v. Guernsey, 10 Cir., 63 F.2d 163, cited by petitioner, conflicts with the opinion of the Ninth Circuit in the Strand case, I chose not to follow it. The Grant case has been disapproved numerous times, exclusive of its blunt rejection by Judge Fee in the Strand case. See United States ex rel. Pasela v. Fenno, 2 Cir., 167 F.2d 593; United States ex rel. Spellman v. Murphy, 7 Cir., 217 F.2d 247; and United States v. Schurman, D. C., 84 F.Supp. 411. I have carefully studied the cases cited by petitioner in his application, have found that they are distinguishable from petitioner's case or not applicable to the specific problem, or that I do not agree with their result.

For the foregoing reasons, I conclude that petitioner did not and could not have begun serving the sentence rendered by the U. S. District Court for the Northern District of Texas until May 8, 1958, when he was taken into custody by the U. S. Marshal pursuant to the bench warrant and judgment and order of commitment of that Court.

The petitioner's application for a writ of habeas corpus is without merit and is denied. The U. S. Marshal is directed to deliver the petitioner forthwith to the Federal Correctional Institution, Texarkana, Texas, the place of detention authorized by the Attorney General for the service of petitioner's federal sentence. It is so ordered.