STATE of Missouri ex rel. Allie STANDEFER, Relator,

v.

Ray ENGLAND, Judge of the Probate Court of Newton County, Missouri, Respondent.

No. 7810.

Springfield Court of Appeals.

Missouri.

Oct. 14, 1959.

Paul E. Carver, Neosho, for relator.

John M. Rice, Neosho, for respondent.

RUARK, Judge.

We issued our alternative writ of mandamus to the judge of the Probate Court of Newton County commanding him to show cause why he should not set aside his previous order dismissing the application of relator for appointment of a guardian of the person and of the estate of one Cimarron C. Standefer, and that he take jurisdiction of said application and proceed to consider and dispose of it. The return of respondent states that, prior to the application for appointment of guardian, the magistrate court had assumed jurisdiction over the person of the said Cimarron Standefer in a criminal prosecution and that the sanity of said Cimarron Standefer can be determined in the criminal prosecution now pending. The question is now, shall we make the alternative writ peremptory?

The agreed statement of facts shows that Standefer was arrested under a felony warrant issued by the magistrate court and placed in jail, where it appears that he is still confined, presumably in default of bond. *Thereafter* the relator filed her application for the appointment of guardian, alleging that "Cimarron C. Standefer * * * is incapable by reason of insanity or other incapacity of managing his property and caring for himself," and the reasons the appointment of a guardian is sought are that Cimarron is the owner of certain property which should be preserved and that "it is necessary that a guardian be appointed in order to preserve his property; as well as to control his personal

acts so that harm might not befall him." The prayer was that the court appoint a guardian of the person and of the estate.[1] The application was dismissed on motion of the prosecuting attorney, and the petition for the alternative writ followed. The prayer of said petition is the same as the command of the alternative writ as above stated.

■ One of the general principles involved is that where two courts have concurrent jurisdiction of a person or particular subject with power to make determination as to the thing in controversy, the court which first assumes that jurisdiction has the exclusive right to proceed without interference from the second.[2]

■ The jurisdiction of the subject matter was vested in the magistrate court when the charge was filed, and the jurisdiction of Standefer's person was obtained when he was arrested and put in jail.[3] It would therefore seem, and we so hold, that the magistrate court having jurisdiction of the person of Cimarron Standefer, the probate court could not interfere with that jurisdiction by the appointment of a *guardian of his person*, and any inquiry conducted for such purpose could serve no end and therefore should not be held.[4]

■ But the jurisdiction of the courts concerned with enforcement of criminal laws to inquire into the sanity of a person charged with a crime is limited not only to the person of the defendant but also in the scope of its inquiry. Under Section 546.510

1. During pendency of the proceeding the subject was examined by the superintendent of Missouri State Hospital No. 3 at Nevada, who found him mentally ill and in need of treatment.

2. 21 C.J.S. Courts § 492, p. 745 et seq.; Ex parte Ingenbohs, 173 Mo.App. 261, 158 S.W. 878 (see also State ex rel. Ingenbohs v. Landis, 173 Mo.App. 198, 158 S.W. 883); State ex rel. Lipic v. Flynn, 358 Mo. 429, 215 S.W.2d 446(7); In re Gaebler's Estate, Mo.App., 248 S.W.2d 12; State ex rel. Townsend v. Mueller,

330 Mo. 641, 51 S.W.2d 8; Finley v. Smith, 352 Mo. 465, 178 S.W.2d 326.

3. State ex rel. Lamar v. Impey, 365 Mo. 437, 283 S.W.2d 480; Noll v. Alexander, Mo.App., 282 S.W. 739(6); see Kellett v. United States, D.C.W.D.Mo., 162 F.Supp. 791; Ex parte Lowe, 94 Tex.Cr.R. 307, 251 S.W. 506.

4. 22 C.J.S. Criminal Law § 170, p. 264; State ex rel. Lamar v. Impey, 365 Mo. 437, 283 S.W.2d 480; State v. Hagerty, 152 Minn. 502, 189 N.W. 411; Hawie v. Hawie, 128 Miss. 473, 91 So. 131.

RSMo 1949, V.A.M.S., determination can be made whether the accused was insane at the time of the alleged crime and whether he is still insane at time of trial, in which event the defendant can be committed to a state hospital to be confined until sanity is recovered. The jurisdiction of the court ends with such commitment.[5] Under Section 545.750 RSMo 1949, V.A.M.S., the criminal court has jurisdiction to try and determine the question of whether the accused became insane after the commission of the crime.

▉ But authority to oversee the administration of *guardianship estates* is vested in the probate court. The circuit court could not appoint a guardian-curator to gather and preserve the property of the accused, for it may not intrude on probate court business when adequate relief can be afforded in that court.[6] Chapter 475, V.A.M.S., contemplates two kinds of guardianships, that of the person and that of the estate. Letters of guardianship may be issued for one *or* the other *or* for both (Section 475.030 et seq.), and provision is made for the appointment of separate guardians (475.090). The characters of the two guardianships are entirely different and distinct, although the same person may serve in both capacities. It has been said that a person of unsound mind is so for all purposes.[7] But under our changing concepts in respect to mental illness, a person may be insane in some degrees or in some respects and yet be accountable

or even normal in other respects.[8] Our legislature has recognized this by the use of the word "incompetent" in the new statute, and by the definition of an incompetent as encompassing various mental disabilities, *including* that of "insanity" [Section 475.-010(3)]. It will be noted that the criminal statutes still cling to the single word "insane," but understanding and interpretation of that word must be made and had in the light of the incidental proceedings which affect the criminal processes and are concerned (only) with jurisdiction of the person of the defendant. And it is well recognized that the degree of insanity which might authorize a guardianship is not always the same as that which suffices for the criminal processes.[9] Under Section 546.510, the test of accountability for a crime is the ability to distinguish right from wrong, and a weak intellect, subnormal capacity, or a mind impaired by alcoholism or drugs is no defense.[10] Under Section 545.750, the test would seem to be whether the accused can appreciate the nature of the charges against him, or whether he is so mentally impaired as to render it probable that, in so far as it may devolve upon him, he cannot have a full, fair, and impartial trial.[11] Under Chapter 475, a guardian can be appointed if the incompetent is incapable, because of various types of mental illness, of managing his property.

▉ Thus it appears to us the appointment of a guardian (curator) over the

5. Richey v. Baur, Mo., 298 S.W.2d 445.

6. Hax v. O'Donnell, 234 Mo.App. 636, 117 S.W.2d 667(6); West St. Louis Trust Co. of St. Louis v. Brokaw, 232 Mo.App. 209, 102 S.W.2d 792; Metzger v. Metzger, Mo. App., 153 S.W.2d 118.

7. Harrelson v. Flournoy, 229 Mo.App. 582, 78 S.W.2d 895; see In re Delany, Mo. App., 226 S.W.2d 366.

8. 44 C.J.S. Insane Persons § 2b(5), p. 13; 14 Am.Jur., Criminal Law, sec. 33, p. 789; State v. McCann, 329 Mo. 748, 47 S.W.2d 95; State v. Pinski, Mo., 163 S.W.2d 785, 787; McElroy v. Lynch, Mo., 232 S.W.2d 507.

9. Ex parte McWilliams, 254 Mo. 512, 164 S.W. 221; State v. Dunbar, 360 Mo. 788, 230 S.W.2d 845(11); State v. Elsea, Mo., 251 S.W.2d 650; State v. Paulsgrove, 203 Mo. 193, 101 S.W. 27, 30.

10. State v. Sapp, 356 Mo. 705, 203 S.W.2d 425; State v. Jackson, 346 Mo. 474, 142 S.W.2d 45; State v. Berry, 179 Mo. 377, 78 S.W. 611; Bennett v. United States, 8 Cir., 158 F.2d 412.

11. Higgins v. McGrath, D.C.W.D.Mo., 98 F.Supp. 670, 673; see Ashley v. Pescor, 8 Cir., 147 F.2d 318.

property of the accused not only would not constitute an interference with the criminal processes (it accomplishes something which cannot be supplied by those processes), but also requires its own independent tests in regard to competency.[12] We are of the opinion that the judge of the probate court had not only the power but also the duty to inquire into (only) whether Standefer was so incompetent as to require the appointment of a guardian over his estate to the end that his property might be gathered and preserved.

The petition prays for and the alternative writ commands that inquiry proceed as to guardian both of the person and of the estate. Can we, in this proceeding, give the relator half a loaf by ordering the probate court to proceed in respect to the appointment of a guardian for the estate only?[13]

■■■■ The prayer is not ordinarily considered as a part of the petition in most litigation and proceedings, and the court may disregard a portion of the prayer and give relief on that portion which is prop-

er.[14] But the extraordinary writ of mandamus "is a stern, harsh writ, and, when issued, is an unreasoning, inflexible, peremptory command to do a particular thing therein specified without condition, limitation, or terms of any kind. Its office is to execute, not to adjudicate; nor can it ascertain or adjust mutual claims or rights between the parties."[15] The final or peremptory writ must be based upon and strictly follow the alternative writ, and (it is usually said) the alternative writ must follow and conform to the petition.[16]

■■■■ It is frequently stated and held by the Missouri courts that "he who seeks mandamus 'must specify just what he wants, nothing more or less.' * * * Thus, unless we can grant the relief sought we can grant no relief."[17] This salutary rule we approve in principle and we expect to follow it as a general course in dealing with these writs. One who chooses to invoke the aid of this extraordinary writ should first know exactly what relief he is entitled to and ask for it alone, not leave it to the superintending court to cull out the whole bushel in order

12. A person might be a skilled manipulator of property and yet be unable to distinguish right from wrong, or vice versa; and a person (a lawyer, for instance) might be able to appreciate the charges against himself and defend himself brilliantly, yet through some mental infirmity not be able to restrain himself from incomprehensible and insane profligacy in squandering his estate.

13. We set this case on the regular docket so that we might have benefit of respondent's brief and argument. The prosecuting attorney, who filed the motion to dismiss in probate court and filed return of respondent in this case, has not so favored us, so we are denied the benefit of his theory of this case.

14. City of Springfield v. Stevens, 358 Mo. 699, 216 S.W.2d 450; Wollums v. Mutual Ben. Health & Accident Ass'n, 226 Mo. App. 647, 46 S.W.2d 259; Bick v. Dixon, 148 Mo.App. 703, 129 S.W. 254; Salmons v. Dun & Bradstreet, 349 Mo. 498, 162 S.W.2d 245, 141 A.L.R. 674; Roberts v. Quisenberry, 362 Mo. 404, 242 S.W.2d 26; Wells v. Wells, Mo.App., 117 S.W.2d 700.

15. State ex rel. Lyons v. Bank of Conception, 174 Mo.App. 589, 163 S.W. 945, 946; State on inf. Barker ex rel. Kansas City v. Kansas City Gas Co., 254 Mo. 515, 163 S.W. 854.

16. State ex rel. State Highway Commission v. Trimble, 329 Mo. 987, 47 S.W.2d 779; State ex rel. Dilliner v. Cummins, 338 Mo. 609, 92 S.W.2d 605; State ex rel. Smith v. Hull, 348 Mo. 48, 152 S.W.2d 106; State ex rel. Miller v. Board of Education of Consol. School Dist. No. 1, 224 Mo.App. 120, 21 S.W.2d 645.

17. State ex rel. Hart v. City of St. Louis, 356 Mo. 820, 204 S.W.2d 234, 240; State ex rel. Chase v. Hiers, 240 Mo.App. 99, 217 S.W.2d 577; State ex rel. Black v. Renner, 235 Mo.App. 829, 148 S.W.2d 809; State ex rel. Mills v. Turnage, 217 Mo.App. 278, 263 S.W. 497; State ex rel. Dick & Bros. Quincy Brewery Co. v. Quincy, O. & K. C. R. Co., 199 Mo.App. 668, 204 S.W. 584; School Dist. No. 11 v. Lauderbaugh, 80 Mo. 190, 194; State ex rel. Miller v. Board of Education of Consol. School Dist. No. 1, 224 Mo.App. 120, 21 S.W.2d 645.

to search for one good apple. But this rule, like many others, is subject to indulgence and discretion. In order to avoid injustice the courts have sometimes gone around to enter at the back door by allowing the petition to be amended and then amending the alternative writ.[18]

In State ex rel. St. Louis County v. St. Johns-Overland Sanitary Sewer Dist., 353 Mo. 974, 185 S.W.2d 780, 783, the court stated the general rule but nevertheless reversed the case with directions to the lower court to determine under the facts how much of the decree prayed for was enforceable and to amend the decree accordingly. And in State ex rel. Kent v. Olenhouse, 324 Mo. 49, 23 S.W.2d 83, 87, it was stated that the peremptory writ need not "in all things" follow the alternative writ, but it cannot go beyond it.[19]

 The public has an interest and the state stands as *parens patriae* in guardianship proceedings for various reasons, one of them being that it is to the interest of the public that the estate of the proposed ward be not squandered.[20] The interest of the public is such that a petition in guardianship proceedings cannot be dismissed by the petitioner except by consent

of the probate court acting in its discretion for the best interests of the public and the person whose competency is under inquiry.[21] Such being the case, we believe that any discretion we may have should be directed toward the preservation of that public interest.

 Since with filing of the petition the proceeding became one of public interest and some supervisory control of the proceeding was in the court, we see no reason why the probate judge should not have ignored that portion of the prayer for relief which was beyond his jurisdiction and proceeded to determine the issue which was properly before him. Accordingly the alternative writ is amended to eliminate that portion which calls for a determination of the necessity for appointment of a guardian of the person, thus in effect leaving the original proceeding to inquire into the competency of Standefer to manage his property and the necessity of the appointment of a guardian of his estate. As so amended the alternative writ is made final and peremptory and the respondent is commanded to proceed in accordance therewith.

STONE, P. J., and McDOWELL, J., concur.

18. See State ex rel. State Highway Commission v. Trimble, 329 Mo. 987, 47 S.W. 2d 779; State ex rel. Wattenbarger v. Lamb, 174 Mo.App. 360, 160 S.W. 55; see also State ex rel. Whitehead v. Wenom, 326 Mo. 352, 32 S.W.2d 59; State ex rel. Waters-Pierce Oil Co. v. Baggot, 96 Mo. 63, 8 S.W. 737; State ex rel. Lashly v. Wurdemann, 183 Mo.App. 28, 166 S.W. 348(8); State ex rel. Beach v. Beach, 325 Mo. 175, 28 S.W.2d 105.

19. See also State ex rel. Riefling v. Sale, 153 Mo.App. 273, 133 S.W. 119; State

ex rel. Dilliner v. Cummins, 338 Mo. 609, 92 S.W.2d 605, 609.

20. State ex rel. Wilkerson v. Skinker, 344 Mo. 359, 126 S.W.2d 1156, 122 A.L.R. 532; Hirst v. Cramer, Mo., 195 S.W.2d 738, 741; Ex parte Trant, 238 Mo.App. 105, 175 S.W.2d 161, 164.

21. State ex rel. Paxton v. Guinotte, 257 Mo. 1, 165 S.W. 718, 51 L.R.A.,N.S., 1191; Boatmen's National Bank of St. Louis v. Wurdeman, 344 Mo. 573, 127 S.W.2d 438, 440; State ex rel. Terry v. Holtkamp, 330 Mo. 608, 51 S.W.2d 13, 19.