STATE ex rel. Kenneth BAUMRUK,
Relator,

v.

Honorable Ronald M. BELT, Judge,
Circuit Court, Macon County,
Respondent.

No. 79861.

Supreme Court of Missouri,
En Banc.

Feb. 24, 1998.

Patrick J. Berrigan, Kansas City, Larry Bagsby, St. Charles, for relator.

John R. Lasater, Dean P. Waldemer, James J. Redmond, Asst. Pros. Attys., Clayton, for respondent.

Jeremiah W. (Jay) Nixon, Atty. Gen., Karen King Mitchell, Hugh L. Marshall, Asst. Attys. Gen., Jefferson City, for Mo. Atty. Gen. as amicus curiae.

COVINGTON, Judge.

The issue before this Court is whether section 552.020.10(6), RSMo 1994, requires respondent to dismiss the criminal charges pending against relator, Kenneth Baumruk. Because the plain meaning of section 552.020.10(6) requires the dismissal of the criminal charges against relator, this Court makes the alternative order in mandamus peremptory as amended.

On May 5, 1992, relator attended a proceeding for the dissolution of his marriage in the St. Louis County courthouse. It is alleged that during this hearing relator shot and killed his wife. It is also alleged that relator shot and wounded his lawyer, his wife's lawyer, a court bailiff, and a court security officer. Police shot relator nine times, twice in the head. Doctors surgically removed part of the right frontal lobe of his brain in order to save his life.

The state charged relator with first degree murder and multiple counts of first degree

assault and armed criminal action. Before trial, relator filed a "Motion for Commitment of the Accused for Lack of Competency to Proceed." Respondent ordered a mental competency evaluation of relator, pursuant to section 552.020.2. On January 24 and January 27, 1994, the trial court conducted a competency hearing. The court found that relator suffered from organic personality dementia, which rendered him incompetent to stand trial. The trial court ordered relator committed to the custody of the director of the department of mental health, pursuant to section 552.020.8. A second hearing was held a year and a half later after relator had been reevaluated pursuant to section 552.020.10(1). At that hearing, the trial court found not only that relator was incompetent to stand trial, but also that there was "no substantial probability that [he would] be mentally fit to proceed in the reasonably foreseeable future."

Pursuant to chapter 475, Fulton State Hospital subsequently filed a "Petition for Appointment of Guardian and Conservator and Motion for Authorization to Admit Ward to a Mental Health Facility" in the probate division of the Circuit Court of Callaway County. Relator contested the chapter 475 guardianship proceeding and requested a jury trial. The jury unanimously found that relator did not need a court-appointed guardian or conservator because the state did not prove by clear and convincing evidence that relator was disabled, partially disabled, incapacitated, or partially incapacitated.

Following the guardianship proceeding, relator moved for the trial court to dismiss the criminal charges against him. He claimed that section 552.020.10(6) directs the trial court to dismiss charges against a mentally incompetent defendant once guardianship proceedings have been filed and the probate court makes its findings. The trial court denied the motion.

Relator filed a petition for a writ of mandamus in the Missouri Court of Appeals, Western District. The court of appeals denied the petition. Relator then petitioned this Court to issue a writ of mandamus ordering the trial court to dismiss the criminal charges against him and to discharge him from custody.

According to the United States Supreme Court, the Due Process Clause of the United States Constitution mandates that a criminal defendant have the right not to be tried while legally incompetent. In *Drope v. Missouri,* 420 U.S. 162, 171–73, 95 S.Ct. 896, 903–905, 43 L.Ed.2d 103 (1975), the United States Supreme Court held that "a person whose mental condition is such that he lacks the capacity to understand the nature and proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to trial." The United States Supreme Court also has addressed the difficult constitutional issues facing the courts when a defendant is deemed incompetent to stand trial for the foreseeable future. In *Jackson v. Indiana,* 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972), the United States Supreme Court concluded that a person charged by a state with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. *Id.* at 738, 92 S.Ct. at 1858. The Court also found that a criminal defendant could not be subject to civil commitment standards that were different than those applicable to non-defendants. *Id.* at 730, 92 S.Ct. at 1854. The Court held that if a defendant is not mentally fit to proceed to trial and there is no substantial probability that the defendant will attain such capacity in the foreseeable future, the trial court must either institute the "customary civil commitment proceeding ... or release the defendant." *Id.; see also Ex parte Kent,* 490 S.W.2d 649, 651 (Mo. banc 1973)(this Court suggesting procedures, in light of the *Jackson* decision, for the trial court to follow in dealing with incompetent defendants who do not have a substantial probability of attaining such capacity in the foreseeable future). In *Jackson,* the Court refused to rule on whether the Constitution required the dismissal of the criminal charges pending against the defendant. *Jackson,* 406 U.S. at 740, 92 S.Ct. at 1859.

The Missouri legislature also has been cognizant of the constitutional concerns related to incompetent defendants. Section 552.020 explicitly recognizes the right of mentally incapacitated persons who cannot understand the proceedings against them or act in their own defense not to be tried for so long as the incapacity endures. The statute sets out the procedures by which a defendant is identified as mentally incompetent, the steps the trial court must take to determine the nature and duration of the state's subsequent custody of that defendant, and the instances in which the criminal charges against the defendant must be dismissed.

The statute first states that "[w]henever any judge has reasonable cause to believe that the accused lacks mental fitness to proceed," he or she must appoint at least one psychiatrist or psychologist to examine the defendant. Section 552.020.2. The appointed medical professional is to provide the court with a report that sets out detailed findings and opinions regarding the mental status of the accused and that recommends a course of action. Section 552.020.2–.3. Upon the recommendation of the medical professional, the court may order the accused to be committed "pending determination of the issue of mental fitness to proceed." Section 552.020.5.

The determination of mental fitness to proceed is made at a competency hearing at which the trial court reviews the reports and testimony of the various examiners. Section 552.020.7–.8. If, after reviewing this evidence, the court determines that the accused is mentally unfit for trial, the court shall commit the accused to the director of the department of mental health. Section 552.020.8.

Six months after the accused is committed at the initial competency hearing, the court shall order a detailed examination of the accused to ascertain whether he is mentally fit to proceed and, if not, whether there is a substantial probability that he will attain the mental fitness to proceed to trial in the foreseeable future. Section 552.020.10(1). Upon written request, both the accused and the state shall be entitled to an examination of the accused by a qualified medical professional. Section 552.020.10(2). The court

uses these examinations to make its determination, or, if any such opinion is contested, the court shall hold a hearing on the issue. Section 552.020.10(1)-(3). If the court conducts a second hearing, pursuant to section 552.020.10(3), at the second hearing, the same procedures are employed as in the first hearing. If the court determines that the accused is mentally fit for trial, criminal proceedings against the accused shall proceed. Section 552.020.10(4). If the court determines that the accused is not mentally fit for trial, but that there is a substantial probability that the accused will be mentally fit to proceed in the reasonably foreseeable future, then the court shall continue the commitment for a period not longer than six months, after which the court shall reinstitute competency proceedings as outlined above. Section 552.020.10(5).

Section 552.020.10(6), which governs disposition of this case, sets forth the procedures the court must follow if the court determines that the accused is both mentally unfit to proceed to trial and has no substantial probability of regaining competence in the reasonably foreseeable future. Section 552.020.10(6) provides:

> If it is found that the accused lacks mental fitness to proceed and there is no substantial probability that the accused will be mentally fit to proceed in the reasonably foreseeable future, the court shall dismiss the charges and the accused shall be discharged, unless proper proceedings have been filed under chapter 632 or chapter 475, RSMo, in which case those sections and no others will be applicable. The probate division of the circuit court shall have concurrent jurisdiction over the accused upon the filing of a proper pleading to determine if the accused shall be involuntarily detained under chapter 632, RSMo, or to determine if the accused shall be declared incapacitated under chapter 475, RSMo, and approved for admission by the guardian under section 632.120 or 633.120, RSMo, to a mental health or retardation facility. *When such proceedings are filed, the criminal charges shall be dismissed when the court makes its finding on whether the accused is mentally ill and*

*should be committed or whether he is incapacitated and should have a guardian appointed.*[1]

(Emphasis added.)

Relator contends that because the trial court found him incompetent to stand trial and substantially unlikely to regain competency in the foreseeable future, and because the court has returned a finding that he is not incapacitated and that a guardian should not be appointed under chapter 475, he now has a right under section 552.020.10(6) to have the charges against him dismissed. Relator rests this contention upon the last sentence of section 552.020.10(6), which states, "When such proceedings are filed, the criminal charges shall be dismissed when the court makes its finding on whether the accused is mentally ill and should be committed or whether he is incapacitated and should have a guardian appointed."

█ As has been noted repeatedly, this Court has a duty to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider words used in their plain and ordinary meaning. *Wolff Shoe Co. v. Director of Revenue*, 762 S.W.2d 29, 31 (Mo. banc 1988). This Court cannot look to rules of construction if the statute contains no ambiguity. *Bosworth v. Sewell*, 918 S.W.2d 773, 777 (Mo. banc 1996). "When statutory language is clear, courts must give effect to the language as written." *M.A.B. v. Nicely*, 909 S.W.2d 669, 672 (Mo. banc 1995). The plain language of section 552.020.10(6) is clear and compels only one resolution.

█ As noted above, section 552.020.10(6) delineates a procedure to be followed after an accused is found to lack mental fitness to proceed to trial and it appears that he will not be mentally fit to proceed in the reasonably foreseeable future. The language clearly describes the procedure. If proper proceedings are not brought pursuant to chapter 632 or chapter 475, the criminal charges against the accused must be dismissed. If,

however, proceedings are instituted under chapter 632 to determine whether the accused should be committed, or if proceedings are instituted under chapter 475 to determine whether the accused should have a guardian appointed, then charges need not be dismissed immediately. Rather, the court must dismiss the criminal charges when the court makes its finding on whether the accused should be committed (under chapter 632 proceedings) or whether the accused should have a guardian appointed (under chapter 475 proceedings). Because the statute specifies that the charges "*shall* be dismissed *when* the court makes its finding *on*" the requisite issue, the duty to dismiss arises once the court makes its finding on the issue, irrespective of the outcome of the particular proceeding. Section 552.020.10(6).

In this case, the circuit court found that relator lacked the mental fitness to proceed with trial and that there was no reasonable probability that he would be fit to proceed in the reasonably foreseeable future. The Fulton State Hospital instituted a proceeding under chapter 475 to have a guardian appointed. In the guardianship proceeding, the jury found that relator was not incapacitated and, consequently, that a guardian should not be appointed. Because that verdict constitutes a finding on "whether he is incapacitated and should have a guardian appointed," the plain language of section 552.020.10(6) requires that the trial court dismiss the charges against relator.

In an attempt to avoid the consequences mandated by the plain language of section 552.020.10(6), respondent's counsel (counsel) makes several arguments. If not explicitly, then implicitly, counsel seeks to establish an ambiguity by proffering an alternative reading of the statute. Counsel contends that the statutory language "the criminal charges shall be dismissed when the court makes its finding on whether the accused is mentally ill and should be committed or whether he is incapacitated and should have a guardian

---

1. In 1997, the legislature amended section 552.020. The corresponding sentence of the amended section now states, "When such proceedings are filed, the criminal charges shall be dismissed without prejudice if the court finds that the accused is mentally ill and should be committed or that he is incapacitated and should have a guardian appointed." Sec. 552.020.11(6), RSMo Supp.1997. The amended section does not apply to the instant case.

appointed" means that the duty to dismiss the charges arises *if* the court finds *that* the accused is mentally ill and should be committed or *that* he is incapacitated and should have a guardian appointed.

As much as counsel might wish for the result that his construction allows, the plain language does not permit that construction. The legislature plainly stated that "the criminal charges shall be dismissed when the court makes its finding on whether the accused is mentally ill and should be committed or whether he is incapacitated and should have a guardian appointed." Section 552.020.10(6). The language simply establishes that the charges must be dismissed when the court makes its finding on the ultimate issue under either a chapter 632 or a chapter 475 proceeding. There is no ambiguity.

■ Counsel also contends that the statutory language does not support this Court's reading because the language does not include a statement that the charges shall be dismissed when the court makes its finding on whether *or not* the accused should be committed or whether *or not* a guardian should be appointed. Counsel argues that the omission of *or not* after the word *whether* contradicts this Court's interpretation of the statute. Counsel overlooks the well-established rule that when the word *whether* is used to introduce an issue, *whether* encompasses both the positive and negative resolution of the issue. In other words, use of *or not* is superfluous. Bryan A. Garner, *A Dictionary of Modern Legal Usage* 575 (Oxford University Press 1987). The legislature's omission of *or not* does not alter the meaning of section 552.020.10(6).

2. In his prayer for relief, relator requests not only that the charges be dismissed, but also that he be discharged from the custody of the department of mental health. Relator, however, neither briefs nor argues the issue of discharge from custody. As a consequence, this Court will not address the issue.

3. Counsel and the state, in its *amicus curiae* brief, request that this Court specify that the dismissal of the charges against relator be without prejudice. The issue of whether the dismissal is with or without prejudice, however, is not

Finally, counsel argues that if this Court interprets section 552.020.10(6) to require that relator be discharged, then the statute will lead to an absurd result and one inconsistent with other statutory provisions. This Court's holding, however, is only that the statute requires dismissal of the criminal charges.[2]

In summary, section 552.020.10(6) clearly and unambiguously states that the charges against an incompetent defendant shall be dismissed when the court makes its finding on whether the accused is incapacitated and should have a guardian appointed. This Court must apply the statute as written. *Nicely,* 909 S.W.2d at 672. Because the court in the chapter 475 guardianship proceeding found that relator did not need a court-appointed guardian, relator has a clear, unequivocal, and specific right under section 552.020.10(6) to have the charges against him dismissed.[3]

Respondent is ordered to dismiss the criminal charges pending against relator, and the alternative order in mandamus is made peremptory as amended.

LIMBAUGH, ROBERTSON and WHITE, JJ., concur.

PRICE, J., dissents in separate opinion filed.

BENTON, C.J., and HOLSTEIN, J., concur in opinion of PRICE, J.

PRICE, Judge, dissenting.

In finding that the plain and ordinary meaning of section 552.020.10(6), RSMo 1994, is unambiguous and requires that the criminal charges against Kenneth Baumruk be dismissed,[1] the majority ignores the express language of the statute, adds words to the

properly before this Court. This Court will not speculate as to what issues and arguments could be raised if and when the state proceeds anew against relator. Consequently, this Court expresses no opinion on the issue at this time.

1. The majority refuses to address the serious issues that may preclude refiling of these charges, leaving open the possibility that Baumruk will walk free from his acts of May 5, 1992, without trial or treatment.

statute that are not there, and reaches an absurd result that is contrary to the legislative intent of the statute. I dissent.

The principal failing of the majority opinion is that it does not give effect to the actual words used in section 552.020.10(6). The statute provides that charges shall be dismissed only when:

[T]he court makes its findings on whether *the accused is mentally ill and should* be committed or whether *he is incapacitated and should have a guardian appointed.* (Emphasis added.)

The only express terms in the statute that require dismissal of charges are that the accused is "committed" or has "a guardian appointed". No express language in the statute even addresses what should happen if the accused is not committed or a guardian is not appointed, let alone mandates dismissal of criminal charges.

The majority infers that charges must be dropped from words that are not included in the statute. They argue that the word "whether" encompasses both the positive and the negative resolution of the two conditions and that the words "or not" must be inserted, by interpretation, into the statute. The majority cites without quotation Bryan A. Garner, *A Dictionary of Modern Legal Usage* 575 (Oxford University Press 1987) for support.

Garner, however, addresses the question at hand in only the most superficial way.[2] In subpart (C) of his definition of the word "whether" he merely notes that:

*Whether or not.* The *or not* is usually superfluous. E.g., *"Whether or not* [read *whether* ] the special litigation committee determines that the derivative suit should have been brought remains to be seen."

Garner does not state that the words "or not" must *always* be assumed; he does not provide a comprehensive explanation for all uses of "whether"; and he gives, for example, a relatively simple sentence structure that is unlike the language at issue. Specifically, Garner does not address the use of the word "whether" with two disjunctive clauses, as here:

When such proceedings are filed, the criminal charges shall be dismissed when the court makes its finding on whether the accused is mentally ill and should be committed or whether he is incapacitated and should have a guardian appointed.

The Oxford English Dictionary, however, discusses the use of the word "whether" extensively. In discussing the use of the word "whether" precisely as used in section 552.020.10(6), it states:

[When i]ntroducing a disjunctive clause (usually with correlative *or* ) having a qualifying or conditional force, and standing in adverbial relation to the main sentence … *whether.. or* = [means] whichever of the alternative possibilities or suppositions be the case; in either of the cases mentioned; if on the one hand.. and likewise on the other hand.

The *Oxford English Dictionary*, Vol. XII, V–Z (Clarendon Press 1961).

Likewise, it is instructive to refer to Webster's Third New International Dictionary, 2603. In its first of four definitions of the word "whether", it states "which one of the two". Webster's offers an entirely separate definition for the term "whether or no *also* whether or not" that is stated as "in any case". When applied to the words actually used in the statute, this distinction is crucial. The legislature used only the word "whether" indicating a choice between the two stated conditions, not the words "whether or not" which would have indicated in any case.

An example of this distinction in the use of the word "whether" is found in the following sentence: "We will arrive in St. Louis in two hours whether going by car or whether going by train." In this context, the use of the word "whether" with the correlative "or" means that if either of the alternatives occurs, we will arrive in St. Louis in two hours. However, the sentence does not mean that if we sit still, walk, or ride a horse, we will arrive in St. Louis in two hours, although

---

**2.** In his introduction, Garner openly states that "this dictionary lays no claim to comprehensive-

ness."

that is the "plain and ordinary meaning" that the majority would impose.

A further indication of the error in the majority's interpretation of this sentence is that it renders every word after "finding" surplusage.

> When such proceedings are filed, the criminal charges shall be dismissed when the court makes its finding *on whether the accused is mentally ill and should be committed or whether he is incapacitated and should have a guardian appointed.* (Emphasis supplied.)

If the use of the words "finding on" in conjunction with the word "whether [or not]" means that the charges are to be dropped regardless of the findings reached, stating those findings would be unnecessary. The sentence immediately preceding the sentence at issue makes clear what proceedings and what findings are involved.

> The probate division of the circuit court shall have concurrent jurisdiction over the accused upon the filing of a proper pleading to determine if the accused shall be involuntarily detained under chapter 632, RSMo, or to determine if the accused shall be declared incapacitated under chapter 475, RSMo, and approved for admission by the guardian under section 632.120 or 633.120, RSMo, to a mental health or retardation facility.

There could be no purpose in restating the subject of the findings unless it is to restrict the triggering of dismissal of the charges to the two conditions expressly stated. To render these words meaningless is contrary to our duty to harmonize all provisions of a statute so that "every word, clause, sentence and section thereof must be given some meaning." *Staley v. Missouri Director of Revenue,* 623 S.W.2d 246, 250 (Mo. banc 1981).

While I believe the majority is simply wrong concerning the plain and ordinary meaning of section 552.020.10(6), at the very least the use of this complex sentence structure and the use of the word "whether" renders the provision ambiguous. Ambiguity is defined in Black's Law Dictionary, 6th ed. (West Publishing 1990), as:

> **AMBIGUITY.** Doubtfulness; doubleness of meaning. (Citations omitted.)

This is not a high standard. For the majority to refuse even to acknowledge doubt concerning the proper reading of this statute belies a simplistic approach that fails to take into account the difficulty of statutory interpretation. *See James E. Westbrook, A Comparison of the Interpretation of Statutes and Collective Bargaining Agreements: Grasping the Pivot of Tao,* 60 Mo. L. Rev. 283 (1995), and the inherent inability of humans, let alone legislatures, to express themselves with certain clarity in language. As stated by Alexander Hamilton in Federalist 37:

> When the Almighty Himself condescends to address mankind in their own language, His meaning, luminous as it must be, is rendered dim and doubtful by the medium through which it is communicated.

One wonders what better knowledge the majority has regarding the use of a word to which the Oxford Dictionary devotes one and one-half pages and to which Webster's Dictionary devotes four definitions and a separate fifth definition for the term the majority wishes to insert in its place that allows them to state, "There is no ambiguity."

A recognition of ambiguity allows consideration of traditional rules of construction. *Brownstein v. Rhomberg–Haglin & Assoc.,* 824 S.W.2d 13, 15 (Mo. banc 1992). One "compelling rule of construction requires the court to presume that the legislature did not intend to enact an absurd law and favors a construction that avoids unjust or unreasonable results." *Abrams v. Ohio Pacific Exp.,* 819 S.W.2d 338, 341 (Mo. banc 1991). The purpose of section 552.020 is to protect the rights of incompetent individuals who have been charged with crimes. The purpose of the statute was not to provide a legal loophole for an individual to argue in one proceeding that he is not competent, in another proceeding that he is competent, and then, without any exercise of prosecutorial, guard-

ian/institutional or judicial discretion, automatically to escape both trial and treatment. Such a result is absurd and unjust, especially when the evidence introduced at the guardianship proceeding was inconsistent with and provides cause to reexamine the earlier finding that the defendant was incompetent to proceed.[3]

Another crucial consideration is subsequent legislative action. The legislature has clarified, without question, its intention that individuals should not be allowed to commit horribly violent acts and then be allowed to walk free without trial or treatment to endanger the public again when it amended the sentence in question in 1997 to read:

> When such proceedings are filed, the criminal charges shall be dismissed without prejudice if the court finds that the accused is mentally ill and should be committed or that he is incapacitated and should have a guardian appointed.

Had the legislature intended this statute to have produced the absurd result reached by the majority, it would have amended the statute differently.

---

**3.** In closing argument at that proceeding, Baumruk's attorney argued that:

Well, he's not a disabled person. Is anything more clear than that? Here is the definition of "disabled person." It's in Instruction No. 6. The term "disabled person" as used in these instructions means "one who is unable by reason of any physical or mental condition to receive and evaluate information or to communicate decisions to such an extent that the person lacks ability to manage his financial resources."

\* \* \* \*

He deserves that chance. He's already spent enough time in that hospital wasting away. He's not an incapacitated person. This is a guy who knows what he wants to do. He's got a set mind. He doesn't want people in his way.

\* \* \* \*

He's functioning at a level of 70, global assessment scale, minor everyday problems. That's what the doctor said. Oh, but he's in a structured environment. Well, so why don't we give him a chance and see what he can do outside. Is that so bad? What's wrong with that? That's what we're asking you to do.