In the Matter of the Care and Treatment of William T. BARLOW, Respondent,

v.

STATE of Missouri, Appellant.

No. WD 61778.

Missouri Court of Appeals, Western District.

June 24, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 29, 2003.

Application for Transfer Denied Sept. 30, 2003.

James Robert Layton, Jefferson City, for Appellant.

Sean D. O'Brien, Kansas City, for Respondent.

Before RONALD R. HOLLIGER, P.J., PAUL M. SPINDEN, and JAMES M. SMART, JR., JJ.

JAMES M. SMART, JR., Judge.

The State of Missouri appeals the decision of the Probate Division of the Circuit Court of Jackson County dismissing for lack of jurisdiction the Attorney General's Petition filed against William Barlow under the Sexually Violent Predator Act, §§ 632.480 through 632.513, RSMo 2000. We vacate the dismissal and remand the case.

## Statement of Facts

William T. Barlow (also formerly known as William T. Stitt)[1] has an extensive history of violent crimes against women. A brief history of his major offenses will suffice for present purposes. Barlow stabbed a girl, but did not kill her, when he was fifteen. At nineteen, he strangled to death a woman, while on a date with her, after she refused sexual activity. Barlow was convicted of murder in the second degree but was released on parole after only eight and a half years later due to good behavior while incarcerated. Barlow married after being released. He

---

1. At the time of his commitment, his name was William T. Stitt. He legally changed his name to William T. Barlow in the late 1980s.

states that he often beat his wife during sexual intercourse. Twelve years after the first murder, in 1968, Barlow stabbed his wife. He was not prosecuted but was sent into psychiatric care. While hospitalized, Barlow expressed thoughts of killing his wife. Despite this, Barlow was released from the psychiatric hospital.

Three years later, while driving, he observed a woman in a nearby car. Barlow had been having sadistic sexual fantasies, and he had been driving around "looking to do a disgusting thing." Barlow intentionally forced the woman's car off the road and then stabbed her to death. Soon afterwards, Barlow was caught molesting his eight-year-old stepdaughter. This resulted in a commitment to a psychiatric hospital. He told the hospital staff that he had "urges and feelings of committing rape and murder." He was again released from psychiatric care.

About a year later, when he was reading in the newspaper about the fact that his murder of the woman driving the car remained unsolved, he again felt pressure or motivation to murder. He went out, looking for a victim. He wanted someone else to know the pain that he felt when he was raped as a fifteen-year-old, he later said. He observed a woman in a laundromat. He assaulted her and stabbed her to death. That crime also remained unsolved until Barlow was arrested as a suspect in a kidnapping and rape eight months later, and was questioned about that offense and others. At that time he confessed to the unsolved murders, although he denied the kidnapping and rape. Because he was deemed by the prosecution and medical authorities to be a "criminal sexual psychopath" under sections 202.700 to 202.770, RSMo 1978, Barlow was not prosecuted but, in lieu thereof, was committed by the Circuit Court of Jackson County to the care and custody of the Missouri Department of Mental Health in 1973 as a criminal sexual psychopath.

Barlow remains committed under the Criminal Sexual Psychopath Act ("CSP Act") and resides at the Northwest Missouri Psychiatric Rehabilitation Center in St. Joseph. He still is considered a sexual sadist by the physicians overseeing his care. He has, however, sufficiently impressed the physicians that he has been allowed to work on a regular basis outside the hospital and been granted numerous passes to visit his brother in another city. Barlow has not demonstrated problems in connection with his work. Barlow and his brother purchased a house, in which his brother lives and which Barlow visits. Barlow bought a vehicle and transports himself to and from work. Barlow also was briefly and unsuccessfully married since his commitment (to a woman whom, he said, was attracted to his sadistic tendencies). He stated that he was unable to experience an orgasm without simultaneously beating his wife. Barlow has not been found to have criminally re-offended since his commitment, but there have been incidents of inappropriate conduct of a sexually related nature, such as sending unsolicited video footage of "bondage pornography" to a female psychiatric patient because he thought that she would appreciate it. Concerns also have been raised by his brother and others as to potential danger in some of Barlow's activities related to women.

On August 21, 2000, the Attorney General filed a petition in the probate court of Jackson County seeking Barlow's commitment under the Sexually Violent Predator Act ("SVP Act"), sections 632.480 through 632.513, RSMo 2000. Barlow filed a motion to dismiss the petition for lack of jurisdiction. The court granted the motion, holding that the probate court lacked jurisdiction over Barlow because he was

still under the jurisdiction of the Circuit Court of Jackson County under the CSP Act. The Attorney General now appeals.

### Analysis

The Attorney General raises one point on appeal: that the probate court erred in dismissing the petition for lack of jurisdiction.

First, however, we address Barlow's motion to dismiss and argument wherein he asserts that this court lacks subject matter jurisdiction to hear this appeal. Barlow argues that the proceedings to commit a person as a sexually violent predator are special statutory proceedings in which the right to appeal is explicitly limited to a case in which a person has been adjudicated to be a sexually violent predator. Barlow argues that the only right to appeal created in the SVP Act is contained in section 632.495, RSMo 2000, which provides:

> The court or jury shall determine whether, beyond a reasonable doubt, the person is a sexually violent predator. If such determination that the person is a sexually violent predator is made by a jury, such determination shall be by unanimous verdict of such jury. Such determination may be appealed.

Barlow cites the case of *In re Salcedo,* 34 S.W.3d 862 (Mo.App.2001), for the proposition that there is no statutory right to appeal unless a person has been adjudicated a sexually violent predator.

■■■ The right to appeal is purely statutory. Where no statute grants the right to appeal, no such right exists. *Farinella v. Croft,* 922 S.W.2d 755, 756 (Mo. banc 1996). Missouri has a general appellate statute, section 512.020, RSMo 2000, which provides:

> Any party to a suit aggrieved by any judgment of any trial court in any civil cause from which an appeal is not pro-

hibited by the constitution, nor clearly limited in special statutory proceedings, may take his appeal to a court having appellate jurisdiction from any order granting a new trial, or order refusing to revoke, modify, or change an interlocutory order appointing a receiver or receivers, or dissolving an injunction, or from any interlocutory judgments in actions of partition which determine the rights of the parties, or from any final judgment in the case or from any special order after final judgment in the cause . . .

*Salcedo* held that the SVP Act was a "special statutory proceeding" under section 512.020. *Salcedo,* 34 S.W.3d at 868. *Salcedo* then noted the absence of any right to appeal except the one granted in section 632.495, RSMo 2000. *Id.* The court found that "the General Assembly—when it created the special statutory proceeding in the SVP Act—clearly intended to limit appeals to one specific instance, viz: a determination under § 632.495 that a person is a sexually violent offender." *Id.*

■■■ Barlow ignores the fact that after *Salcedo,* the legislature quickly changed section 632.495. The current version is:

> The court or jury shall determine whether, beyond a reasonable doubt, the person is a sexually violent predator. If such determination that the person is a sexually violent predator is made by a jury, such determination shall be by unanimous verdict of such jury. *Any determination as to whether a person is a sexually violent predator may be appealed.*

§ 632.495, RSMo 2002 Cum.Supp. (emphasis added). The limiting language, which the *Salcedo* court interpreted to limit the right of appeal, has been eliminated. The current version is permissive, where the

old version was ambiguous and could be considered restrictive. This court sees no reason why the current version of section 632.495 should be interpreted to limit the right to appeal from all proceedings under the SVP Act. It does not "clearly limit" the right to appeal under section 512.020. We cannot say that the express grant of a general right to appeal in one circumstance of the SVP Act will exclude all appeals from other decisions made under the SVP Act. The right to appeal must be "clearly limited" in a special statutory proceeding for section 512.020 to not apply. In any event, a jurisdictional ruling must be subject to appeal even if not specified by statute, for otherwise there would be no review of a court's jurisdiction. Accordingly, we hold that section 512.020 applies to the grant of dismissal in this case, and this court has subject matter jurisdiction to hear the case. The motion to dismiss is denied.

Now we consider the main issue: whether a person currently committed as a criminal sexual psychopath may also be committed by a probate court under the SVP Act.

■ In 1980, the Missouri legislature repealed the CSP Act. The legislature, however, provided that those already committed under the CSP Act would remain committed under the same terms as the CSP Act. § 632.475, RSMo. When the legislature adopted the SVP Act in 1998, it provided for the possibility that an individual committed as a criminal sexual psychopath could be adjudicated a sexually violent predator. The SVP Act defines "sexually violent predator" as:

> [A]ny person who suffers from a mental abnormality which makes the person more likely than not to engage in preda-

tory acts of sexual violence if not confined in a secure facility and who:

> (a) Has pled guilty or been found guilty, or been found not guilty by reason of mental disease or defect pursuant to section 552.030, RSMo, of a sexually violent offense; or
>
> (b) Has been committed as a criminal sexual psychopath pursuant to section 632.475 and statutes in effect before August 13, 1980.

§ 632.480(5), RSMo 2002 Cum.Supp. The first step in the process of being defined a sexually violent predator is for notice to be given to the Attorney General that a person might be a sexually violent predator. The SVP Act clearly contemplates that a person, still committed as a criminal sexual psychopath, may be referred to the Attorney General as a possible sexually violent predator:

> When it appears that a person may meet the criteria of a sexually violent predator, the agency with jurisdiction shall give written notice of such to the attorney general.... Written notice shall be given:
>
> (1) Within three hundred sixty days prior to the anticipated release from a correctional center of the department of corrections of a person who has been convicted of a sexually violent offense ...
>
> (2) At any time prior to the release of a person who has been found not guilty by reason of mental disease or defect of a sexually violent offense; or
>
> (3) *At any time prior to the release* of a person who was committed as a criminal sexual psychopath pursuant to section 632.475 and statutes in effect before August 13, 1980.

§ 632.483.1, RSMo 2002 Cum. Supp (emphasis added).[2] Once a person presently

---

2. The procedure for committing persons not

in the custody of the Department of Mental

confined as a CSP is referred to the Attorney General, a prosecutors' review committee reviews the records of the person and makes a determination as to whether the person meets the definition of a sexually violent predator. § 632.483.5, RSMo 2002 Cum.Supp. If the prosecutors' review committee determines, by a majority vote, that the person meets the definition of a sexually violent predator, then the Attorney General may file a petition in probate court alleging that the person is a sexually violent predator and stating sufficient facts to support such an allegation. § 632.486, RSMo 2002 Cum.Supp. A trial is then held to determine whether the person is a sexually violent predator. § 632.492, RSMo 2002 Cum.Supp.

Section 632.486 prescribes venue in the "probate division of the circuit court" in which the person was convicted or committed pursuant to Chapter 552, RSMo. We note that there is no mention of commitment pursuant to former sections 202.700 through 202.770, or the current statute whereby people committed under the CSP Act remain under the jurisdiction of the Department of Mental Health, section 632.475. Thus, technically, the statutes fail to specify venue for the case of individuals formerly committed under the CSP Act. However, no objection is raised herein as to venue in Jackson County, and Jackson County is the obviously appropriate place. Because Barlow was committed in the Circuit Court of Jackson County, and because it is the obvious intent of the statute to place venue in the probate division of the county where the commitment occurred, we conclude that venue is proper in the probate division of the Circuit Court of Jackson County.

As for the matter of whether the probate court is empowered to exercise jurisdiction over the person of Barlow, who continues at this time under the jurisdiction of Division 6 of the Circuit Court, we see no impediment to the exercise of jurisdiction of the probate court. The SVP Act clearly contemplates that persons currently committed under the CSP Act are also subject to commitment under the SVP Act.

The probate court, in this case, dismissed the petition because it found that it did not have jurisdiction over Barlow under the doctrine of "concurrent jurisdiction." The probate court cited the case of *State ex rel. Standefer v. England*, 328 S.W.2d 732 (Mo.App.1959), for the proposition that when two courts have jurisdiction of a person or particular subject with power to make a determination as to the thing in controversy, the court which first assumes the jurisdiction has the exclusive right to proceed without interference from the second. *Id.* at 735.

In *Standefer*, the subject person was arrested under a felony warrant issued by a magistrate court and held in jail pending resolution of the charges. While he remained in that status, an application was filed in the probate court to appoint a guardian for Standefer's person and estate on the grounds that Standefer was incapable by reason of insanity or other incapacity of caring for himself. The court in that case, recognizing that the magistrate court already was exercising jurisdiction over the issue of the accused's sanity and competence, held that the probate court could not exercise concurrent jurisdiction over the same subject. The court, however, did permit the probate court to inquire into

Health or the Department of Corrections is contained in section 632.484, RSMo 2002 Cum.Supp. We note that sections 632.483 and 632.484 are independent of one another. Pursuant to 632.483.1 and 632.486, a person

need not be released from the custody of the Department of Corrections or the Department of Mental Health to be adjudicated a sexually violent predator.

the appointment of a guardian over the estate of the accused. Courts wish to avoid conflicts that might be presented by the simultaneous exercise of jurisdiction as to the same subject. This is a common sense doctrine. The obvious purpose of the doctrine is to avoid confusion, inefficiency, and unseemly "turf battles" between courts. In *Standefer*, both courts were permitted to inquire into the sanity and competence of the subject; but only one could do so as to the issue of treatment of the person where there might be a conflict between the two. The court in *Standefer* concluded that the exercise of probate jurisdiction as to the issue of the guardian of the property would not constitute an interference or conflict with the criminal processes.

■■■ In this case, relying on *Standefer*, the probate court found that it did not have jurisdiction over "the person" of Barlow because he was still under the jurisdiction of the Circuit Court of Jackson County which had committed him under the CSP Act. We believe that in this particular instance, the probate court misapplied the law. Two courts are not precluded from having jurisdiction over a person at the same time. Rather, two courts are precluded from having jurisdiction over a person with respect to the same issue at controversy. *See State ex rel. Gen. Dynamics Corp. v. Luten*, 566 S.W.2d 452, 458 (Mo. banc 1978). For example, a person convicted of a crime in one state is not forever removed from the jurisdiction of another state that wishes to try him for a related or separate crime committed there. Also, two separate civil suits may be brought against the same person in two different state courts. Jurisdiction over a person may be had in many courts, so long as two courts are not attempting to adjudicate the same issue at controversy. "Exclusive jurisdiction of one court only applies when actions between the same parties are for the same cause of action and for the same relief, or in which the same relief could have been granted." *Wood v. Wood*, 716 S.W.2d 491, 493 (Mo.App.1986).

■■■ Also, because the doctrine of concurrent jurisdiction is a judicial doctrine that arises out of common sense, the legislature is not bound by it, but may purposefully prescribe an overlap of jurisdiction if it chooses to do so. *See, e.g.,* Section 552.020.10(6) RSMo 2000 (allows probate division concurrent jurisdiction with circuit court when it is alleged the accused lacks competence to proceed); *State ex rel. Baumruk v. Belt*, 964 S.W.2d 443, 445 (Mo. Banc 1998). Here, it is clear from the language of the SVP act that the legislature has specifically contemplated and authorized a proceeding under the SVP Act as to someone who is already under the jurisdiction of the circuit court as a criminal sexual psychopath.

The legislature made provision for the SVP Act after the CSP Act had already been repealed for a number of years. Civil commitment under the CSP Act was not the same as a civil commitment under the SVP Act. The SVP Act provides for a higher level of supervision than the CSP Act did. A person adjudicated to be a criminal sexual psychopath was to be committed to "state hospital no. 1 at Fulton where he shall be detained and treated until released...." § 202.730, RSMo 1978 (repealed). The standards for the commitment, care and treatment of a sexually violent predator are far more stringent:

> If the court or jury determines that the person is a sexually violent predator, the person shall be committed to the custody of the director of the department of mental health for control, care and treatment until such time as the person's mental abnormality has so changed that the person is safe to be at large.... At all times, persons committed ... shall be kept in a secure facility desig-

nated by the director of the department of mental health and such persons shall be segregated at all times from any other patient under the supervision of the director of the department of mental health. The department of mental health shall not place or house an offender determined to be a sexually violent predator ... with other mental health patients who have not been determined to be sexually violent predators. § 632.495, RSMo 2002 Cum.Supp. While the CSP Act, despite its repeal, still remains applicable to Barlow, the probate court is not barred by the doctrine of concurrent jurisdiction from exercising jurisdiction over Barlow. The SVP Act specifically directs that those committed under the CSP Act may be adjudicated a sexually violent predator. It is clear that, if a person committed under the CSP Act is subsequently adjudicated to be a sexually violent predator, the SVP Act will take precedence and will supplant the mandate of the CSP Act.

The Attorney General, after review of the matter in the prosecutor's review committee, is empowered to seek a more stringent standard of commitment for Barlow than provided under the CSP Act, pursuant to the terms of the SVP Act. At this point, no judicial determination has been made as to whether Barlow properly qualifies for commitment under the SVP Act. The doctrine of concurrent jurisdiction does not preclude the filing of such a petition.

The decision of the trial court is vacated and the case is remanded for further proceedings.

HOLLIGER and SPINDEN, JJ., concur.