**In the Matter of the CARE AND TREATMENT OF Robert L. LIEURANCE, Appellant.**

**No. 25096.**

Missouri Court of Appeals, Southern District, Division One.

Feb. 19, 2004.

Motion for Rehearing or Transfer Denied March 11, 2004.

Application for Transfer Denied April 27, 2004.

Emmett D. Queener, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., James R. Layton, State Solicitor, for Respondent.

Before BARNEY, P.J., PREWITT and GARRISON, J.J.

PER CURIAM.

Robert L. Lieurance ("Appellant") appeals from the judgment of the trial court finding that he is a sexually violent predator ("SVP") as defined by Missouri's SVP statute, and committing him involuntarily to the Missouri Department of Mental Health ("DMH") pursuant to that statute. *See* Sections 632.480–513.[1] In two points on appeal, Appellant argues that his commitment as an SVP violated his constitutional rights to due process and equal protection in that the trial court lacked jurisdiction to commit him under the SVP statute because of the applicability of the doctrine of concurrent jurisdiction, and because Appellant, having been committed under the now-defunct criminal sexual psychopath ("CSP") law, Sections 202.700–770, RSMo (1978) (repealed 1980), was denied equal protection of the law. We disagree with both arguments and affirm the judgment of the trial court.

Appellant does not contend here that the evidence was insufficient to support the trial court's finding that Appellant is an SVP, making a lengthy recitation of Appellant's behavioral history unnecessary.

Suffice it to state the following: Appellant has been in the custody and care of DMH for the past twenty-five years, since a trial court committed him in 1979 as a CSP. In 2000, Appellant sought conditional release from the custody of DMH. At that time, DMH officials notified the attorney general of Missouri that Appellant might meet the criteria for being declared an SVP. Pursuant to Section 632.483.4, a multi-disciplinary committee was convened to determine whether Appellant met the definition of an SVP. The committee answered that question affirmatively, after which finding a prosecutor review committee reviewed Appellant's records and also determined that Appellant met the definition of an SVP.

On May 26, 2000 the attorney general, pursuant to Section 632.486, filed a petition in the trial court seeking commitment of Appellant as an SVP. The trial court, following a hearing held on September 20, 2000, found that probable cause existed to believe Appellant was an SVP and ordered a psychological evaluation of Appellant pursuant to Section 632.489.4.

Appellant waived his right to trial by jury and a bench trial was had on June 24–25, 2002, during which the court heard testimony from several expert witnesses for the State, as well as the testimony of Appellant. Two of the State's expert witnesses, after interviewing Appellant and reviewing the entirety of his record, concurred in their separate diagnoses of Appellant as suffering from pedophilia, narcissistic personality disorder, and antisocial personality disorder. Both agreed that Appellant was more likely than not to re-offend if released from the custody of DMH.

The trial court determined, following trial, that Appellant met the definition of an

---

1. References to statutes are to RSMo (2000) unless otherwise indicated.

SVP and ordered him committed as such to the custody of DMH. Appellant filed a post-trial motion to dismiss for lack of jurisdiction or, alternatively, to reconsider the judgment, upon which the trial court never ruled. This appeal followed.

In his first point, Appellant challenges the jurisdiction of the trial court to commit him to the custody of DMH as an SVP. Appellant claims that to do so was a violation of his right to due process because he was already committed to DMH as a CSP, a commitment which was in "full force and effect until terminated by a court" and that "the concurrent jurisdiction doctrine confers jurisdiction [of] a matter [on] the first court to act, and denies jurisdiction to a subsequent court over the same matter."

 The standard of review in court-tried cases is established law: the judgment of the trial court is to be affirmed unless "there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); Rule 84.13(d).[2] In cases where the evidence is uncontroverted or admitted, so that the issues on appeal are legal in nature, we need not defer to the trial court's judgment. *Burleson v. Director of Revenue*, 92 S.W.3d 218, 220 (Mo.App. S.D.2002).

Missouri's CSP law, under which Appellant was committed to DMH in 1979, defined a criminal sexual psychopath as a person suffering from a

mental disorder and not insane or feeble[-]minded, which mental disorder has existed for a period of not less than one year immediately prior to the filing of the petition provided for [by statute]

coupled with criminal propensities to the commission of sex offenses, and who may be considered dangerous to others[.]

Section 202.700, RSMo (1978) (repealed 1980). The law provided for the filing of a petition seeking commitment (Section 202.710), the procedure for adjudicating that petition (Section 202.720), commitment to a state hospital (Section 202.730), and the procedure for release (Section 202.740).

The CSP law was repealed in 1980. Enacted at the same time was Section 632.475, a transitional provision which provided for the continued commitment of persons previously committed under the repealed CSP law, as well as a procedure whereby those persons could petition for release.

In 1998, the legislature enacted the current SVP statute, Sections 632.480–513. In that statute, a sexually violent predator was defined, in part, by reference to the previous CSP statute in that a sexually violent predator was defined as

any person who suffers from a mental abnormality which makes the person more likely than not to engage in predatory acts of sexual violence if not confined to a secure facility and who:

. . . .

(b) Has been committed as a[CSP] pursuant to [S]ection 632.475 and [the prior CSP law].

Section 632.480(5). Thus, the legislature, when it enacted the SVP statute, clearly contemplated its application to persons such as Appellant who were already committed under the CSP statute and Section 632.475.

---

**2.** *Murphy* interpreted the provisions of Rule 73.01(c). The provisions of that rule now appear in essentially the same form in Rule 84.13(d). References to rules are to Missouri Rules of Civil Procedure (2003) unless otherwise indicated.

In 2000, after Appellant petitioned for conditional release from DMH custody, the State petitioned to have him committed under the SVP statute, pursuant to Section 632.483. The trial court found, following trial, that Appellant met the definition of an SVP and committed him under that statute to the custody of DMH. Appellant's argument here is that in doing so the trial court ran afoul of the concurrent jurisdiction doctrine, which, simply stated, provides that if two courts can exercise jurisdiction over a particular person and subject, the court that first exercises such jurisdiction does so to the exclusion of subsequent intervention by the second court. *See State ex rel. Standefer v. England*, 328 S.W.2d 732, 735 (Mo. App. Springfield Dist.1959) ("[W]here two courts have concurrent jurisdiction of a person or particular subject with power to make determination [sic] as to the thing in controversy, the court which first assumes that jurisdiction has the exclusive right to proceed without interference from the second."). Indeed, "[t]he law is well settled that the jurisdiction of a court first invoked cannot be defeated by a subsequent proceeding in a court having concurrent jurisdiction of the person or subject matter." *State ex rel. Lamar v. Impey*, 365 Mo. 437, 283 S.W.2d 480, 482 (1955); *see also State ex rel. Sullivan v. Reynolds*, 209 Mo. 161, 107 S.W. 487, 492–93 (1907); *Blechle v. Goodyear Tire and Rubber Co.*, 28 S.W.3d 484, 487 (Mo.App. E.D.2000); *State ex rel. Palmer v. Goeke*, 8 S.W.3d 193, 195 (Mo.App. E.D.1999).

Appellant argues that the doctrine of concurrent jurisdiction applies here because he remains under the jurisdiction of the circuit court that originally committed him as a CSP in 1979. According to Appellant, this prohibited the trial court here from asserting jurisdiction to commit him as an SVP, based upon the same evidence of sexually-motivated activity considered by the first court in 1979, because both courts were exercising jurisdiction over the same person and the same subject matter. What Appellant characterizes as a legislative attempt to "reclassify" CSP's as SVP's failed, in Appellant's view, to account for the concurrent jurisdiction issue and requires the reversal of the trial court's judgment committing him as an SVP.

Appellant also argues that the trial court's exercise of jurisdiction to commit him as an SVP results in an "insidious . . . interference with the treatment conditions to which [he] is entitled under the CSP law but [which are] denied to him under the SVP law." Under Section 632.475, the court that committed Appellant under the CSP law may release Appellant on condition of a minimum of three years probation. However, even if the court were to do so, Appellant could not now be released because he would still be committed under the order of the trial court here, committing him as an SVP. Moreover, Appellant argues, under the CSP law Appellant can progress through a series of steps to lessen restrictions placed upon him—a "step down" process—that is denied him under his commitment as an SVP. *See* Section 632.501, .504. According to Appellant, "[t]hese are the sorts of conflicts between courts of equal stature that the concurrent jurisdiction doctrine is intended [sic] to avoid."

The western district of this court, in *Barlow v. State*, 114 S.W.3d 328 (Mo.App. W.D.2003), recently considered an argument identical to that espoused by Appellant under this point. In *Barlow*, the court stated the "main issue" as "whether a person currently committed as a[CSP] may also be committed by a probate court [sic] under the SVP Act." *Id.* at 332. After summarizing the procedures outlined in the CSP and SVP laws, the court stated

that it was aware of "no impediment to the exercise of jurisdiction of the probate court [sic]" over a person previously committed as a CSP. *Id.* at 333. The court noted that the "SVP Act clearly contemplates that persons currently committed under the CSP Act are also subject to commitment under the SVP Act." *Id.*

As to the issue of concurrent jurisdiction, the *Barlow* court acknowledged our holding in *Standefer*, but distinguished the facts in that case from the facts before it, noting that in *Standefer*, two courts, one probate and one magistrate, purported to exercise concurrent jurisdiction over the same person *and* the same issue in controversy, namely, the sanity and competence of an accused felon. *Id.; see Standefer* at 735. The *Barlow* court acknowledged our "common sense" statement in *Standefer* that the "purpose of the [concurrent jurisdiction] doctrine is to avoid confusion, inefficiency, and unseemly 'turf battles' between courts." *Id.* at 334. It held, however, that because in *Standefer* the circuit court's rationale for dismissing for lack of jurisdiction was that it did not have jurisdiction over the *person* of the defendant, the doctrine of concurrent jurisdiction, which prohibits competing claims of jurisdiction over the same person *and* issue at controversy, did not apply. *Id.*

Moreover, the *Barlow* court noted that "because the doctrine of concurrent jurisdiction is a judicial doctrine that arises out of common sense, the legislature is not bound by it, but may purposefully prescribe an overlap of jurisdiction if it chooses to do so." *Id.* (citing as an example Section 552.020.10(6), which allows for concurrent probate division and circuit court jurisdiction over an accused when it is alleged the accused may lack competence to proceed); *see also State ex rel. Baumruk v. Belt*, 964 S.W.2d 443, 445 (Mo. banc 1998). The court held it was "clear from the language of the SVP [A]ct that the legislature has specifically contemplated and authorized a proceeding under the SVP Act as to someone who is already under the jurisdiction of the circuit court as a[CSP]." *Id.* Therefore, the *Barlow* court held, although "the CSP Act, despite its repeal, still remain[ed] applicable to [the defendant], the probate court [sic][was] not barred by the doctrine of concurrent jurisdiction from exercising jurisdiction over [him]." *Id.* at 335.

Appellant acknowledges the holding in *Barlow* permitting the exercise of concurrent jurisdiction of CSP and SVP courts, but submits to this court that the court in *Barlow* "was simply wrong to do so" and that its holding should not be perpetuated here. Appellant alleges that the *Barlow* court, after acknowledging our holding in *Standefer* that "only one court could exercise jurisdiction over the treatment of [a] person where there might be a conflict between" the jurisdiction of two courts, *Barlow* at 334, incorrectly characterized commitment under the CSP law as different from commitment under the SVP law because of the different treatment environments mandated by those statutes, so that the holding in *Standefer* did not apply.

Moreover, Appellant takes issue with the *Barlow* court's citation to *Baumruk* for the proposition that the legislature properly "trumped" the common law doctrine of concurrent jurisdiction, arguing that the "overlap referred to .... in *Baumruk* and ... *Barlow* is the limited and temporary jurisdiction authorized by Section 552.020." Appellant argues that the temporary overlap of jurisdiction authorized by Section 552.020 is sufficiently distinguishable from the permanent overlap at issue here to call into question its applicability to the instant case.

While Appellant's argument under this point is well reasoned, we decline his invitation not to duplicate the course taken by the court in *Barlow*. In following the holding of that court, we need not, and do not, comment on its assessment of the applicability of our holding in *Standefer* to the simultaneous commitment of a person as a CSP and an SVP. Rather, we are persuaded by the relatively straightforward notion that the legislature, in expressly contemplating and providing for the commitment as an SVP of a person already committed under the repealed CSP law, was within its authority to disregard a judicially created construct such as the concurrent jurisdiction doctrine. It is a well-established principle that "[c]ommon law is subject to change by the legislature or judicial decision." *Baker v. Empire Dist. Elec. Co.*, 24 S.W.3d 255, 265 (Mo. App. S.D.2000) (citing *Adams v. Children's Mercy Hosp.*, 832 S.W.2d 898, 905–06 (Mo. banc), *cert. denied*, 506 U.S. 991, 113 S.Ct. 511, 121 L.Ed.2d 446 (1992) (constitutional enactment of a statute abrogating the common law is "a valid exercise of a legislative prerogative")); *see also Harrell v. Total Health Care, Inc.*, 781 S.W.2d 58, 61 (Mo. banc 1989) (legislative elimination of all causes of action for medical malpractice against health service corporations was a valid exercise of legislative discretion to change the substantive common law).

It is our duty, "[w]hen statutory language is clear, [to] give effect to the language as written." *Baumruk* at 446. The SVP law expressly defines a sexually violent predator, in part, as any person who "suffers from a mental abnormality which makes the person more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility and who ... [h]as been committed as a[CSP] pursuant to [S]ection 632.475 and [the prior CSP law]." Section 632.480(5)." The trial court here found that Appellant, currently confined as a CSP, suffers from a mental abnormality making him more likely than not to engage in predatory acts of sexual violence if not confined to a secure facility, and Appellant does not challenge that finding here. The unavoidable conclusion, therefore, is that the SVP statute unambiguously conferred jurisdiction over Appellant to the trial court notwithstanding the continuing jurisdiction of the court that committed him as a CSP, and that it was free to do so. Appellant's first point is denied.

In his second point, Appellant alleges that the SVP statute is unconstitutional in that it violates his right to equal protection under the law. Specifically, Appellant argues that the requirement of the SVP law that he be confined to a secure facility while, as a CSP, he qualifies for consideration for less restrictive environments, is an unconstitutional impingement on his fundamental liberty interests such that the equal protection clauses of the state and federal constitutions are violated.

The Missouri Constitution confers on our supreme court exclusive jurisdiction in all cases involving the constitutional validity of a statute. Mo. CONST. art. V, § 3. At the time this appeal was initiated, the supreme court had not decided the constitutional issue raised by Appellant; thus, we had no jurisdiction to hear that argument.[3] With that in mind, we issued an

---

3. The State suggests in its response to Appellant's jurisdictional statement that the statute in question here "was implicitly held to be constitutional by the [supreme court's] decision to remand" four prior cases for new trial in light of the court's holding in *In re: Thomas*, 74 S.W.3d 789 (Mo. banc 2002) without addressing the equal protection claims raised therein. The State offers no authority for the notion that the supreme court's silence on a

order on October 7, 2003 wherein we observed that the issue presented by Appellant under this point was pending before the supreme court in three cases set for oral argument. We held this case in abeyance pending a decision in those cases.

In the interim, the supreme court decided the issue raised here in *In the Matter of Care and Treatment of Norton,* 123 S.W.3d 170 (Mo. banc 2003). The appellant in *Norton,* committed as an SVP, challenged the SVP statute on a basis similar to the one raised by Appellant here—that the law violates his right to equal protection by requiring confinement in a secure facility. *Id.* at 174. Specifically, the appellant in *Norton* noted that

> [t]wo ... similar classes of individuals facing civil commitment are allowed ... consideration for [less restrictive] detention and treatment [than those committed as SVP's]: (1) those persons presenting a risk of serious harm to himself [sic] or others pursuant to [S]ection 632.355; and (2) those persons tried and acquitted on the basis of a mental disease or defect pursuant to [S]ection 552.040.4.

*Id.* We are unable to discern a meaningful distinction between the two classes of persons to which the appellant in *Norton* compared himself for purposes of presenting his equal protection claim, and the class presented by Appellant, i.e., those previously adjudicated to be a CSP. We therefore consider the equal protection claim raised in *Norton* to be identical to the claim presented here.

The *Norton* court noted that in

> deciding whether a statute violates the Equal Protection Clause, this Court en-

gages in a two-part analysis. The first step is to determine whether the classification operates to the disadvantage of some suspect class or impinges upon a fundamental right explicitly or implicitly protected by the Constitution. If so, the classification is subject to strict scrutiny and this Court must determine whether it is necessary to accomplish a compelling state interest. If not, review is limited to determining whether the classification is rationally related to a legitimate state interest.

*Id.* at 173. Applying this analysis, the *Norton* court found that while SVP's are not a suspect class, "civil commitment of persons so classified impinges on the fundamental right of liberty." *Id.* at 173. The court held, therefore, that strict scrutiny applied to the appellant's claim, and that to "pass strict scrutiny review, a governmental intrusion must be justified by a 'compelling state interest' and must be narrowly drawn to express the compelling state interest at stake." *Id.* (quoting *Herndon v. Tuhey,* 857 S.W.2d 203, 211 (Mo. banc 1993) (Covington, J., dissenting)).

The *Norton* court went on to hold that the "secure confinement of persons adjudicated to be SVP[']s, as provided in [the SVP law], is narrowly tailored to serve a compelling state interest." *Id.* at 174. As a basis for this holding, the court opined that the State has a compelling interest in protecting the public from crime and that this interest "justifies the different treatment of those persons adjudicated as [SVP's] when, as determined by the legislature, such mental abnormality makes them distinctively dangerous because of the substantial probability that they will commit

---

prior equal protection claim is tantamount to a finding that Appellant's "equal protection argument is not colorable, and that this court can exercise jurisdiction over" Appellant's claim. Moreover, even if the State were able

to provide such authority, it would contradict the State's subsequent contention, in the argument section of its brief, that the holding Appellant seeks under this point is "beyond this court's jurisdiction."

future crimes of sexual violence if not confined in a secure facility." *Id.* at 174. The court also noted the "elaborate, step-by-step procedure" in the SVP law "conferring on the suspected predator a number of rights enjoyed by defendants in criminal prosecutions," as well as the mandated "[a]nnual examinations and court review" afforded SVP's, in holding that the SVP law was narrowly tailored to meet the State's compelling interest. *Id.*

The Supreme Court of Missouri having found the SVP law not to be invalid in the face of an equal protection claim virtually identical to that presented by Appellant, his second point is without merit and must be denied.

The judgment of the trial court is affirmed.